**Francisco R. AVILES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–99–00168–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 18, 2000.

Opinion on Motion for Reasonable Bail,
June 8, 2000.

Discretionary Review Refused
Oct. 4, 2000.

Matt Hennessy, John M. Parras, Houston, for appellant.

William J. Delmore, III, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and LEE.[*]

## OPINION

FROST, Justice.

Indicted for possession with intent to deliver more than 400 grams of cocaine, the appellant moved the court to suppress evidence seized during a search of his vehicle. After the trial court denied his pretrial motion to suppress the evidence, the appellant pled guilty. The trial court sentenced him to thirty-five years' incarceration and imposed a fine of $10,000. In four related points of error, the appellant contends that the trial court erred in denying his motion to suppress. We agree.

### Factual Background

Houston police officer Robert Bogany had received information from his fellow officer, Robert Bradley, that the appellant's vehicle was possibly carrying narcotics. Officer Bogany spotted the appellant driving in the far left lane on U.S. Highway 59 southbound about a half a mile from the George R. Brown Convention Center, near downtown Houston. After following the appellant's vehicle for about a mile, Officer Bogany saw the appellant signal and then move over two lanes just before passing a disabled automobile on the left shoulder. The appellant then took the exit off of U.S. Highway 59 onto Interstate-45 southbound. Officer Bogany followed the appellant in his patrol car and shortly thereafter pulled the appellant over for making multiple lane change. Officer Bradley arrived in an unmarked car a few minutes later to assist Officer Bogany. After obtaining the appellant's consent to

[*] Senior Justice Norman Lee sitting by assignment.

search, Officer Bogany found two duffel bags full of cocaine in the trunk of the appellant's vehicle.

 The appellant filed a pretrial motion to suppress the fruits of the vehicle search, contending that the initial traffic stop was not justified and, therefore, the court should exclude all evidence obtained as a result of the stop. The only witnesses who testified at the hearing on the appellant's motion were (1) Officer Bogany, who had cited the appellant for the traffic violation and (2) Officer Bradley, who had originally informed Officer Bogany that the appellant's vehicle was carrying narcotics and who later secured the cocaine in the appellant's trunk. Officer Bradley's testimony did not relate to the detention.[1] Accordingly, the factual background of this case is taken exclusively from Officer Bogany's testimony. Because the details of his testimony are crucial to our determination of the validity of the traffic stop, we cite verbatim the following relevant excerpts:

> Q: And the traffic violation that you say you saw on 59, you said that Francisco Aviles was in the far left-hand lane and he signaled the lane change?
>
> A: Yes, he did.
>
> Q: And the signaling of the lane change came just before this car that broke down?
>
> A: That's correct.
>
> Q: On the shoulder; right?
>
> A: Yes.
>
> Q: And in your training as an officer, it's safest and it's proper when a car is broke down on the side of the road, to get further away from that vehicle; isn't it?
>
> A: That's correct, to change lanes.

\* \* \* \* \* \*

> Q: So just, in general, as a person is approaching a vehicle in a situation like this where the car broke down in the left shoulder and the person is in the left-hand lane, it is safest and it is proper for the person to move over one lane, at least; is it not?
>
> A: That's correct.
>
> Q: And when you say the violation here, it was not—you said that Francisco Aviles signaled his lane change?
>
> A: Yes, he did.
>
> Q: But you say the violation was that he went over two lanes?
>
> A: Yes.
>
> Q: All right. Now, was there—did he cut anybody off in the first lane that he moved into?
>
> A: No.
>
> Q: You were right behind him.
>
> A: Yes, I was.
>
> Q: What about the second lane, did he cut anybody off there?
>
> A: No.
>
> Q: What time of day was this?
>
> A: It was still daylight; I don't remember exactly what time it was.
>
> Q: Did anyone on the road have to take evasive measures based upon what Francisco Aviles did by changing lanes?
>
> A: No.

## MOTION TO SUPPRESS

 The historical facts are not disputed; therefore, we review the ruling on the motion to suppress *de novo*. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim. App.1999) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)).

 We first consider the legality of the appellant's detention. Generally, a peace officer need not have probable cause to detain a person for investigation, but he

---

1. In examining the validity of traffic stop, it is immaterial that the officer had an ulterior motive for the stop. *See Crittenden v. State*, 899 S.W.2d 668, 673–74 (Tex.Crim.App. 1995). Therefore, the appellant's contention that Officer Bogany had an ulterior motive for the stop, i.e., that Officer Bradley had told him the appellant was possibly carrying narcotics, has no relevance.

must have a reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex.Crim.App.1997); *Reynolds v. State*, 962 S.W.2d 307, 311 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). We must examine the reasonableness of a temporary detention in light of the totality of the circumstances. *See Woods*, 956 S.W.2d at 38. An officer must have "specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts" would justify the detention. *Reynolds*, 962 S.W.2d at 311 (citing *Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Crim.App.1983)). These facts and experiences must create a reasonable suspicion in the officer's mind that some unusual activity is or has occurred, that the detained person is connected with the activity, and that the unusual activity is related to the commission of a crime. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim. App.1997). In determining whether the officer's suspicion was reasonable, we employ an objective standard: whether the facts available to the officer at the moment of detention warrant a person of reasonable caution to believe that the action taken was appropriate. *See Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868; *Hernandez v. State*, 983 S.W.2d 867, 869 (Tex.App.— Austin 1998, pet. ref'd) (quoting *Davis*, 947 S.W.2d at 243).

It is well settled that a detention is justified when a person commits a traffic violation in an officer's presence. *See, e.g., McVickers v. State*, 874 S.W.2d 662, 664 (Tex.Crim.App.1993) (running a red light); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992) (running a stop sign); *Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim.App.1982) (driving with a defective taillight). Here, the state alleges the appellant committed a traffic violation when he made a multiple lane change in a single maneuver. Making a

multiple lane change in a single maneuver is not a *per se* violation of any law; however, section 545.060(a) of the Transportation Code provides:

An operator on a roadway divided into two or more clearly marked lanes for traffic:

(1) shall drive as nearly as practical entirely within a single lane; and

(2) may not move from the lane unless that movement can be made safely.

TEX. TRANSPORTATION CODE ANN. § 545.060(a) (Vernon 1999). " 'The elements of failure to drive in a single marked lane are: (1) a person (2) drives or operates (3) a motor vehicle (4) within a single marked lane, and (5) *moves from that lane without first ascertaining that such movement can be made with safety.*' " *Hernandez*, 983 S.W.2d at 871 (quoting *Atkinson v. State*, 848 S.W.2d 813, 815 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd)) (interpreting § 545.060(a)'s predecessor, TEX. REV. CIV. STAT. ANN. art. 6701d, § 60(a) (Vernon 1977)) (emphasis added). Thus, the question before this court is whether a person of reasonable caution would believe that the multiple lane change could not have been made safely given the facts and experiences related by the officer.

In *Hernandez*, the defendant's truck crossed partially into the adjacent lane and thus failed to stay in a single marked lane. *Id.* at 868. The state produced no evidence to show this movement was unsafe or dangerous, and the court concluded the police officer did not have a reasonable basis for believing the defendant had committed a ticketable traffic offense. *See id.* at 871–72. Similarly, in this case, the state produced no evidence that the appellant's lane change was unsafe or dangerous.

In its brief, the state argues "the appellant's manner of changing lanes was *inherently* unsafe and reckless"[2] because he moved across two lanes of traffic in a

2. Emphasis added.

single maneuver. We are not persuaded by the state's argument that it is inherently unsafe to make a multiple lane change. In evaluating whether a person of reasonable caution would find the appellant could execute this maneuver safely, we focus on the facts of the case, giving close scrutiny to the evidence presented.

The record shows that the appellant was driving down U.S. Highway 59 during daylight hours in the freeway's far left lane. As he approached a disabled vehicle on the left shoulder of the freeway, he signaled a lane change and then "shot across two lanes." The appellant did not cut any other vehicles off in either the first lane or the second lane. No other driver had to take measures to avoid the appellant's vehicle as a result of the appellant's maneuver. Shortly after making the multiple lane change, the appellant took the exit for Interstate–45, which was on the right side of U.S. Highway 59.

Making a deliberate move across two lanes of freeway traffic is arguably a safer maneuver than weaving or drifting into adjacent lanes, which tends to show the driver is not in control of his vehicle. In *Hernandez*, the court declined to find that one incident of drifting into an adjacent lane was inherently unsafe. *Id.* at 872. Likewise, we cannot find, as the state urges, that a multiple lane change is *inherently* unsafe. While there are undoubtedly countless circumstances in which a multiple lane change could not be accomplished safely, there is nothing about this traffic maneuver that makes it *inherently* unsafe. Because a multiple lane change is not inherently unsafe, and there is no evidence in the record to demonstrate that the appellant's multiple lane change was accomplished in an unsafe manner, we find the police officer did not have a reasonable basis for believing the appellant had committed a ticketable traffic offense.

The state vehemently criticizes *Hernandez* to the extent it can be construed as holding "that an unsafe lane change must actually imperil the occupants of the adjacent vehicle in order to constitute a traffic offense." We do not read *Hernandez* to stand for this proposition. Contrary to the state's contention, the accused in *Hernandez* was not weaving, and so *Hernandez* provides no persuasive support for the state's argument that "[p]olice officers should not be required to follow a weaving vehicle, waiting for it to swerve into the path of another vehicle, before taking action." In *Hernandez*, the officer saw the defendant drift slightly to the left one time at around 1:30 in the morning on a nearly deserted five-lane road. *Id.* at 868. The officer did not observe any other erratic movements of the defendant's vehicle. *See id.* When asked why this traffic maneuver was unsafe, the officer in *Hernandez* responded that he was concerned for the driver's well being. *Id.* Given the totality of the circumstances, the *Hernandez* court did not find a man of reasonable caution would believe that the lane change was unsafe to the defendant based on one slow, slight drift at 1:30 a.m. on a nearly deserted road. *Id.* at 872.

■ The state points out that there was at least one vehicle, the police car, near the appellant when he changed lanes. The state argues that *had* the police car received an emergency call and accelerated rapidly, the officer could not have safely passed the appellant's vehicle. We find this logic unpersuasive. Without citing a rule, the state suggests that we interpret the law as requiring drivers changing lanes to anticipate erratic driving by the drivers who might be behind and around them on city roadways. At least one appellate court has already declined to do so. *See DeLeon v. Pickens*, 933 S.W.2d 286, 291 (Tex.App.—Corpus Christi 1996, writ denied) (declining to find that a driver must anticipate that another vehicle will suddenly change lanes). While we recognize this level of defensive driving as an aspirational goal for all drivers, we, like the *DeLeon* court, decline to find that the laws of this state impose such a duty.

We emphasize that the result in this case occurs only because of the particular facts in the record before us, a record that is devoid of any evidence to support a reasonable basis for believing the appellant's multiple lane change was not made safely. Had the police officer testified that he had observed a sign of erratic driving, that traffic was congested and there was no room to safely execute a multiple lane change, or that the lane change could not be made safely for some other reason, the result might be different. The state has the burden to show that the appellants detention was based upon a reasonable suspicion. It failed to do so on the facts presented.

### CONCLUSION

In speaking to the liberty element of the due process clauses, the Texas Court of Criminal Appeals exhorts "[t]he essential guarantee of the due process clauses is that the government may not imprison or otherwise physically restrain a person *except in accordance with fair procedures.*" *Long v. State*, 742 S.W.2d 302, 320 (Tex. Crim.App.1987), *overruled on other grounds, Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990) (quoting ROTUNDA, ET AL., TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 17.4 (1986)) (emphasis added); *Jenkins v. State*, 993 S.W.2d 133, 135 (Tex.App.—Tyler 1999, pet. ref'd). The very purpose of procedural law is to put limitations on the actions of the state to prevent the trampling of individual rights in the state's zeal to prosecute and eradicate crime. While it is true that the appellant was in possession of cocaine, an offense that in this case carried thirty-five years' incarceration and a substantial fine, it is only by forcing the state to observe its own laws that we can protect the freedom and liberty of all individuals. Inasmuch as the state failed to demonstrate the requisite reasonable suspicion to justify the appellant's detention, we have no alternative but to reverse the trial court's denial of the appellant's motion to

suppress and remand the case for further proceedings consistent with this opinion.

### ORDER

#### PER CURIAM.

Appellant was convicted of the offense of possession with intent to distribute more than 400 grams of a controlled substance, namely cocaine. After the trial court denied his pretrial motion to suppress, appellant pleaded guilty and was sentenced to thirty-five years confinement in the Texas Department of Criminal Justice—Institutional Division and a $10,000 fine. On appeal, appellant contended the trial court erred in denying his motion to suppress. On May 18, 2000, this Court issued an opinion in which we held the trial court erred in denying appellant's motion to suppress. Accordingly, we reversed the judgment of conviction and remanded the case to the trial court for further proceedings consistent with our opinion.

On that same day, appellant filed a motion for reasonable bail pursuant to article 44.04(h) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 44.04(h) (Vernon Pamph.2000). Article 44.04(h) states, in pertinent part:

> If a conviction is reversed by a decision of a Court of Appeals, the defendant, if in custody, is entitled to release on *reasonable* bail, regardless of the length of term of imprisonment, pending final determination of an appeal by the state or the defendant on a motion for discretionary review. If the defendant requests bail before a petition for discretionary review has been filed, the Court of Appeals shall determine the amount of bail.... The sureties on the bail must be approved by the court where the trial was had.

*Id.* (emphasis added).

In his motion, appellant has stated that a reasonable bail would be $10,000; however, appellant has not provided this Court with an explanation as to how he arrived at that figure. Appellant only argues that

because this Court's reversal "is predicated upon the holding that all evidence made the basis of the indictment was illegally obtained," a reasonable bail is $10,000. Appellant's motion is devoid of any sworn facts, argument, or discussion of the factors generally considered by courts in making the determination as to the amount of reasonable bail.

In the context of pretrial bail, the trial court is required to consider certain factors in making its bail determination. Specifically, in making determining the amount, if any, of pretrial bail, courts are to be guided by the Texas Constitution and by the criteria listed in article 17.15 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon Supp.2000). The criteria under article 17.15 include:

1. Whether bail is sufficiently high to give reasonable assurance that the defendant will appear;
2. Whether bail is being used as an instrument of oppression;
3. Nature of the offense and the circumstances under which it was committed;
4. Ability to make bail; and
5. Future safety of any victim and the community at large.

*See id.*

In addition to the criteria listed in article 17.15, courts have considered seven other factors when determining what constitutes reasonable bail. These factors have been used by courts when determining the amount of pretrial and appeal bonds: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *See, e.g., Ex parte Rubac,* 611 S.W.2d 848, 849–50 (Tex.Crim.App. [Panel Op.] 1981) (ap-

peal bond); *See Ex parte Emery,* 970 S.W.2d 144, 145 (Tex.App.—Waco 1998, no pet.). This Court has considered the criteria listed in article 17.15 and the additional seven *Rubac* factors in reviewing appeals from applications for pretrial writs of habeas corpus seeking bond reductions. *See, e.g., Maldonado v. State,* 999 S.W.2d 91, 93 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

Article 44.04(h) provides no specific guidance as to the criteria or factors appellate courts should consider in making "reasonable" bail determinations following the reversal of a conviction. We find, however, that it is logical to consider the same criteria and factors used by courts in determining the amounts of pretrial and appeal bonds. Additionally, we should and shall consider the fact that the appellant's conviction has been reversed and the possibility, if any, that the State may retry the appellant under the conditions set by the court in its opinion reversing the conviction.

Appellant's motion requesting reasonable bail under article 44.04(h) did not discuss or proffer any evidence on the criteria listed in article 17.15, the *Rubac* factors, or the possibility of a retrial by the State. Accordingly, we order appellant to file a supplement to his motion requesting bail. In that motion, appellant should provide argument and evidence relevant to the criteria and factors described in this order. The supplemental motion should be verified to the extent it depends on facts and evidence not in the record, within the court's knowledge in its official capacity, or within the personal knowledge of the attorney signing the motion. *See* TEX. R. APP. P. 10.2.

We order appellant to file the supplemental motion as described in this order on or before June 15, 2000. We order the State to file a response to appellant's supplemental motion, also in compliance with

the terms of this order, on or before June 22, 2000.