Reversed and Remanded and Opinion filed August 26, 
2003.
 
In The
 
Fourteenth 
Court of Appeals
____________
 
NO. 
14-01-00945-CR
____________
 
JOEL 
NEIL EICHLER, 
Appellant
 
V.
 
THE 
STATE OF TEXAS, 
Appellee
 

 
On 
Appeal from the 253rd District Court
Chambers 
County, 
Texas
Trial 
Court Cause No. 11,504
 

 
O 
P I N I O N
Appellant, 
Joel Neil Eichler, pled guilty to possession with 
intent to deliver a controlled substance and was sentenced to fifteen 
years= 
imprisonment.  In one point of 
error, appellant claims the trial court committed reversible error by denying a 
motion to suppress evidence obtained as a result of an illegal stop.  We reverse and 
remand.
                                                              

 
 

Factual 
Background
On 
June 13, 2000, at approximately 12:30 a.m., Officer Matt Ashby of the Chambers 
and Liberty County Narcotics Task Force conducted a traffic stop of appellant, 
who was heading eastbound on Interstate 10.  After obtaining appellant=s 
consent to search, Officer Ashby found 446 grams of marijuana and 335 grams of 
methamphetamine in a cracker box in appellant=s 
vehicle.
Appellant 
filed a pretrial motion to suppress the fruits of the vehicle search, contending 
that the initial traffic stop was not justified and, therefore, the court should 
exclude all evidence obtained as a result of the stop.  The only witness who testified at the 
hearing on appellant=s 
motion was Officer Ashby.  Because 
the details of his testimony are crucial to our determination of the validity of 
the traffic stop, we cite verbatim the following relevant 
excerpts:
Q: 
How did you come into contact with the defendant that 
morning?
A: 
I stopped Mr. Eichler on a traffic 
violation.
Q: 
And for what violation did you stop him?
A: 
Failure to maintain a single marked lane of traffic.
Q: 
What did this involve?
A: 
This involved him crossing over the left handCthe 
left line of his lane.
. 
. .
Q: 
Officer Ashby, in yourCbased 
on your training and experience, what, if anything, does weaving or failure 
toCfailure 
to stay in the same lane indicate to you as a possible 
problem?
A: 
One of the most important things is usually they=re 
intoxicated.  They could be tired or 
they could be eating, could be changing a radio station, could be on a cell 
phone.  I mean, there=s 
all kinds of different scenarios, and the main thing is the welfare concern of 
the driver.
Q: 
And are those also the reasons why you stopped the defendant, to see if he had 
any of these problems?
A: 
Yes.

. 
. .
Q: 
Was the traffic heavy or light orC
A: 
It was light.
Q: 
Was he about the only one eastbound right there in that 
vicinity?
A: 
Maybe him and maybe a big truck.
Q: 
Is that aChow 
many lanes is that right there? Is that three?
A: 
That is a three lane highway, yes. 
Q: 
Okay. And what lane was Mr. Eichler in when you 
noticed him?
A: 
As far as I can rememberCI=m 
not real sure on thisCI 
believe it was the middle lane.
. 
. . 
Q:  And you=re 
saying that the probable cause for the stop was that hisCwell, 
you tell us what the probable cause for the stop was.
A: 
He crossed over the left line of his lane.
. 
. .
Q: 
How was it unsafe?
A: 
Well, I don=t 
know.  Next time he goes all the way 
over and hits the concrete median.
Officer 
Ashby also testified that there were no cars, cattle, children, debris, or 
potholes near appellant=s 
vehicle. There was no testimony concerning the speed at which appellant was 
driving.
Motion 
to Suppress

The 
historical facts are not disputed; therefore, we review the ruling on the motion 
to suppress de novo.  See Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  
We first consider the legality of appellant=s 
detention.  The State argues two 
grounds as justification for appellant=s 
detention: (1) his alleged traffic violation and (2) the officer=s 
exercise of his community-caretaking function.[1]  We will consider each of these arguments 
to determine whether the stop was legal.
                               
Traffic Offense
An 
investigative detention requires a police officer to have a reasonable suspicion 
of criminal activity.  See Terry 
v. Ohio, 392 U.S. 1, 30 (1968); Woods v. State, 956 S.W.2d 33, 35 
(Tex. Crim. App. 1997); Reynolds v. State, 962 
S.W.2d 307, 311 (Tex. 
App.CHouston [14th Dist.] 
1998, pet. ref=d).  The reasonableness of a temporary 
detention is determined from a totality of the circumstances.  See Woods, 956 S.W.2d at 38.  We determine, using an objective 
standard, whether the facts available to the officer at the moment of detention 
warrant a person of reasonable caution to believe that the action taken was 
appropriate.  See Terry, 392 
U.S. at 21-22; Hernandez v. State, 983 S.W.2d 867, 869 (Tex. App.CAustin 
1998, pet. ref=d) 
(quoting Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)).  
If an officer has a reasonable basis for suspecting a person has 
committed a traffic offense, the officer may legally initiate a traffic 
stop.  See McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). 
The 
State alleges the appellant committed a traffic violation when he made a single 
swerve over a white hash-marked line.  
However, making such a maneuver is not a per se violation of any 
law.  See Aviles v. State, 23 
S.W.3d 74, 77 (Tex. 
App.CHouston [14th Dist.] 
2000, pet. ref=d).  Section 545.060(a) of the Transportation 
Code provides:
An 
operator on a roadway divided into two or more clearly marked lanes for traffic: 
(1) shall drive as nearly as practical entirely within a single lane; and (2) 
may not move from the lane unless that movement can be made safely.     


Tex. 
Transp. Code Ann. ' 
545.060(a) (Vernon 1999).  
AThe 
elements of failure to drive in a single marked lane are: (1) a person (2) 
drives or operates (3) a motor vehicle (4) within a single marked lane, and (5) 
moves from that lane without first ascertaining that such movement can be 
made with safety.@  Hernandez, 983 S.W.2d at 871 
(quoting Atkinson v. State, 848 S.W.2d 813, 815 (Tex. App.CHouston [14th Dist.] 
1993, pet. ref=d)) 
(emphasis in original).  This court 
must determine Awhether 
a person of reasonable caution would believe that the lane change could not have 
been made safely given the facts and experiences related by the 
officer.@  Aviles, 23 S.W.3d at 77.  
In 
Hernandez, the defendant=s 
truck crossed partially into the adjacent lane and thus failed to stay in a 
single marked lane.  
Hernandez, 983 S.W.2d at 868.  The State failed to show this movement 
was unsafe or dangerous, and the court concluded the police officer did not have 
a reasonable basis for believing the defendant had committed a ticketable traffic offense.  Id. at 871-72.  In Aviles, this court followed 
Hernandez and held that a multiple lane change, without evidence 
demonstrating that it was accomplished in an unsafe manner, did not provide a 
reasonable basis for an officer to believe the driver had committed a ticketable traffic offense.  See Aviles, 23 S.W.3d at 78; 
see also, Benavides v. State, 2001 WL 101787, * 2 (Tex. App.CHouston [14th Dist.] 
Feb. 8, 2001, pet. ref=d) 
(not designated for publication) (factually distinguishing Hernandez; 
driver came up fast on officer and failed to maintain lane by driving over 
Afog 
line@ 
onto the highway shoulder); Cook v. State, 63 S.W.3d 924, 927 
(Tex. App.CHouston [14th Dist.] 
2002, pet. ref=d.) 
(found constant crossing over broken white line into other lane constituted 
reasonable suspicion of lane violation and driving while 
intoxicated).

Like 
Hernandez, this case involves (1) a single instance (2) of crossing a 
lane-dividing line with the left front and rear tires of appellant=s 
vehicle (3) into a lane of traffic traveling the same direction (4) when the 
movement is not shown to be unsafe or dangerous.  Just as in Aviles and 
Hernandez, the State presented no evidence that appellant=s 
failure to stay in a single marked lane was unsafe.  Therefore, Officer Ashby could not have 
had a reasonable basis for suspecting that appellant had committed a traffic 
offense. 
       
Community-Caretaking Exception
The 
State maintains that because Officer Ashby  
testified  the failure to 
stay in the same lane may indicate  
the individual is intoxicated, tired, eating, changing a radio station, 
or talking on a cell phone, and the main concern is the welfare of the driver, 
the stop was justified under the Acommunity-caretaking@ 
exception. 
A 
police officer=s 
duties encompass a community-caretaking function that goes beyond traditional 
investigation and enforcement of the law.  
Cady v. Dombrowski, 413 U.S. 433, 441 
(1973); Wright v. State, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999).  
As part of an officer=s 
duty to Aserve 
and protect,@ 
an officer Amay 
stop and assist an individual whom a reasonable person, given the totality of 
the circumstances, would believe is in need of help.@  Wright, 7 S.W.3d at 151.  An officer may not properly invoke the 
caretaking function if not primarily motivated by it.  See Wright, 7 S.W.3d at 151.  In determining whether an officer acted 
reasonably in stopping an individual to determine if he needs assistance, we 
consider the following four non-exclusive factors: (1) the nature and level of 
the distress exhibited by the individual; (2) the location of the individual; 
(3) whether or not the individual was alone and/or had access to assistance 
other than that offered by the officer; and (4) to what extent the individual, 
if not assisted, presented a danger to himself or others.  Corbin, 85 S.W.3d at 277; 
Wright, 7 S.W.3d at 152.

Officer 
Ashby contends he was concerned that the appellant could have been tired, 
distracted, or intoxicated.  
However, under the Corbin-Wright factors, we conclude it was 
unreasonable for the officer to believe appellant needed assistance.  The first factor, nature and level of 
distress, is given the greatest weight.  
Corbin, 85 S.W.3d at 277.  
Here, there is little to support the conclusion that appellant had any 
type of distress.  According to 
Ashby=s 
testimony, the cause for his concern was a single instance of swerving over the 
dividing line.  It was not continual 
swerving or swerving accompanied by any other erratic behavior.  See, e.g., Cunningham v. State, 
966 S.W.2d 811 (Tex. 
App.CBeaumont 
1998, no pet.) (finding temporary stop of driver was justified when officer 
observed defendant driving a vehicle with a flat tire about 5 m.p.h. on the 
shoulder of the road). Officer Ashby acknowledged there could be several 
non-emergency reasons that would cause a car to weave, including talking and 
eating.  A single swerve alone, as 
Ashby himself conceded, does not necessarily constitute a driver in 
distress.
Second, 
we look to the location of the driver.  
At the time of the stop, appellant was in the center lane of a three-lane 
interstate highway.  Nothing 
indicated the area was isolated or that appellant would be unable to obtain 
assistance if needed.  He was 
traveling along Interstate 10 to Lake Charles, LouisianaCa 
highly populated and well traveled stretch of road.  However, Ashby also indicated there was 
no traffic, supporting a need to offer assistance.  We find these interests balance each 
other out, making the second factor neutral.
            
Next, we look to whether appellant was alone and/or had access to 
assistance other than the officer.  
Corbin, 85 S.W.3d at 278.  
Here, we find that he did not.  
Appellant was driving alone in the truck, and the officer reported no 
other vehicles in the vicinity.  It 
would seem that no other assistance was readily available if appellant were to 
have a traffic accident.
Finally, 
we consider the extent to which the individual presented a danger to himself or 
others if not assisted.  This factor 
weighs against the stop.  The risk 
of falling asleep and losing control of the vehicle is a serious one.  It would present a significant traffic 
danger. However, as in Corbin,  
the distress exhibited by the appellant ended almost immediately and 
Ashby even conceded that it might have been an isolated incident, such as 
changing the radio station.  Without 
more to support that appellant actually was asleep or in distress, we find this 
factor does not support a reasonableness 
finding.

Applying 
the Corbin-Wright factors, we find Officer Ashby=s 
exercise of his community-caretaking function unreasonable.  A single swerve over the dividing-line 
by the appellant was simply too minor for Ashby to reasonably believe that the 
appellant was falling asleep and in need of assistance.  If appellant were Asleepy 
or falling asleep while driving, a reasonable person would expect to see more 
indications of fatigue.@  Id. at 278. 

Conclusion
We 
conclude that the State did not carry its burden of demonstrating the 
reasonableness of the stop on the basis of a suspicion that appellant had 
violated section 545.060(a) of the Transportation Code or as part of the 
officer=s 
community-caretaking function.  
Therefore, we reverse the trial court=s 
judgment of conviction and remand the cause to that court for further 
proceedings consistent with this opinion.
 
 
 
 
/s/        
Leslie Brock Yates
Justice
 
 
 
 
Judgment 
rendered and Opinion filed August 26, 2003.
Panel 
consists of Justices Yates, Anderson, and Frost. 
Publish 
C 
Tex. R. App. P. 47.2(b). 

 
 




[1]  We note 
that in the present case, the State did not argue to the trial court or on 
appeal that Officer Ashby stopped appellant based on reasonable suspicion of 
intoxication.  The officer testified 
that a swerve such as that done by appellant might indicate, in his experience, 
that a driver is intoxicated.  
However, Officer Ashby also identified several other reasons why a driver 
might fail to maintain a single lane of traffic.  Officer Ashby never testified that he 
suspected appellant was intoxicated, nor did the State present any other 
evidence that would support such a 
suspicion.