Opinion issued January 29, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00223-CR






ERIC RENEE MUNOZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 1150452






MEMORANDUM OPINION


 Appellant, Eric Renee Munoz, has been charged with capital murder. Bail was
originally set at no bond. Appellant filed an application for writ of habeas corpus,
requesting that bail be set at $75,000. After a hearing on the writ, the trial court
granted habeas corpus relief, but set bail at $1,000,000. In this appeal, appellant
contends the amount of bail is statutorily and constitutionally excessive and
unreasonable. We affirm.

BACKGROUND

 The probable cause affidavit in this case provided the following: On January
3, 2002, Sergeant W. Kuhlman arrived at the scene of a fatal shooting. Sixteen-year-old Carlos Christopher Zamudo died from a gunshot wound to the neck. A witness
at the scene, Aizar Trevino, told officers that he had been driving his brother's blue
Honda Accord, and that Zamudo was sitting in the passenger seat, when the two
decided to stop at a Whataburger restaurant. While eating at the Whataburger,
Trevino noticed a purple Escalade circle the restaurant. Shortly thereafter, a Hispanic
female named Cynthia or Sandra approached their car. The girl was crying and told
them that her boyfriend had kicked her out of his car. She asked Trevino and Zamudo
to take her to a nearby apartment to visit a friend, which they agreed to do. As he
turned into the apartment complex, Trevino again noticed the purple Escalade, which
was leaving the complex. Two men then pulled guns on Trevino and Zamudo and
ordered them out of the car. Trevino got out of the car and ran; he saw Zamudo on
the ground and he then heard six shots being fired in Zamudo's direction. One of the
men ordered the girl into Trevino's car, which then sped away. Trevino did not see
the purple Escalade again, but he believed that the event was a "set up" that began at
the Whataburger restaurant. The police found the stolen Honda the next day; it had
been stripped of its custom wheels and rims and burned.

 The crime went unsolved for several years, until Sandra Gaitan was arrested
on unrelated charges. When Gaitan was interviewed, she at first claimed that she was
a victim of the crime, but later admitted to being a party to Zamudo's murder. 
Specifically, Gaitan admitted that she had lured Trevino and Zamudo to the apartment
complex so that appellant and Robert Narvez could steal their car. Narvez and
appellant, armed with guns, approached Trevino and Zamudo and demanded that they
get out of the car. Gaitan then saw appellant shoot Zamudo, who was unarmed.

 PROPRIETY OF BAIL SETTING


 In his sole point of error, appellant argues that the million-dollar bail is
statutorily and constitutionally excessive and unreasonable. To determine whether
the trial court abused its discretion, we consider the rules found in article 17.15 of the
Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 17.15
(Vernon 2005).

 The standard of review for reviewing bail settings is whether the trial court
abused its discretion. See Ex parte Rubac, 611 S.W.2d 848, 850 (Tex. Crim. App.
1981). In the exercise of its discretion, a trial court should consider the following
rules in setting a defendant's bail:

 1. The bail shall be sufficiently high to give reasonable
assurance that the undertaking will be complied with.


 2. The power to require bail is not to be used so as to make it
an instrument of oppression.


 3. The nature of the offense and the circumstances under
which it was committed are to be considered.


 4. The ability to make bail is to be regarded, and proof may
be taken upon this point.


 5. The future safety of a victim of the alleged offense and the
community shall be considered.


Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); see Ludwig v. State, 812
S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that the court is "to be governed in
the exercise of [its] discretion by the Constitution and by the [article 17.15 factors]").

 The burden of proof is upon a defendant who claims bail is excessive. Rubac,
611 S.W.2d at 849; Ex parte Martinez-Velasco, 666 S.W.2d 613, 614 (Tex.
App.--Houston [1st Dist.] 1984, no pet.). The primary purpose for setting bond is
to secure the presence of the defendant in court at his trial. Ex parte Vasquez, 558
S.W.2d 477, 479 (Tex. Crim. App. 1977); Ex parte Bonilla, 742 S.W.2d 743, 744
(Tex. App.--Houston [1st Dist.] 1987, no pet.). The amount of bail should be set
sufficiently high to give reasonable assurance that the accused will comply with the
undertaking, but should not be set so high as to be an instrument of oppression. Ex
parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); Ex parte Willman, 695
S.W.2d 752, 753 (Tex. App.--Houston [1st Dist.] 1985, no pet.). Courts should also
consider the defendant's work record, family ties, residency, past criminal record,
conformity with previous bond conditions, other outstanding bonds, and aggravating
factors involved in the offense. See Rubac, 611 S.W.2d at 849-50; see also
Martinez-Velasco, 666 S.W.2d at 614-15.

A. Nature of the Offense

 The record reflects that the State indicted appellant for capital murder for
intentionally or knowingly causing the death of Carlos Zamudio with a firearm,
during the course of committing and attempting to commit a robbery. See Tex. Pen.
Code Ann. § 19.03(a)(2) (Vernon Supp. 2008). An offense under this statute is a
capital felony. Id. § 19.03(b) (Vernon Supp. 2008). The punishment for this offense
is imprisonment for life, or death, as the State is seeking the death penalty in this case. 
Id. § 12.31 (Vernon Supp. 2008).

 Although high, other murder cases have held $1,000,000 bonds not to be
excessive under certain circumstances. See Ex parte Brown, No. 05-00-00655-CR,
2000 WL 964673 (Tex. App.--Dallas July 13, 2000, no pet.) (not designated for
publication) (holding that $1,000,000 bail not excessive for murder when defendant
did not present testimony relating to factors in article 17.15); Ex parte Pulte, No. 2-03-202-CR, 2003 WL 22674734 (Tex. App.--Fort Worth Nov. 13, 2003, no pet.) (not
designated for publication) (holding that $1,000,000 bail not excessive for solicitation
of murder when record showed that defendant had assets, had not shown evidence of
bond he could make, and committed offense while on bond for related offense); Ex
parte Saldana, No. 13-01-00360-CR, 2002 WL 91331 (Tex. App.--Corpus Christi
Jan. 24, 2002, no pet.) (not designated for publication) (holding that $1,000,000 bail
for capital murder not excessive in light of violent nature of offense, defendant's
family's ability post a $500,000 bond previously, defendant's membership in violent
gang, and other evidence suggesting defendant posed flight risk and danger to
community).

 Here, the nature of the offense reflects that appellant allegedly shot and killed
16-year-old Carlos Zamudio because he wanted the rims from the car in which
Zamudio was a passenger. The State intends to prove that appellant was not merely
a party to the crime, but that he was the actual gunman who fired at Zamudio. Based
on the serious nature of the crime and the substantial penalty if convicted, the trial
court could have reasonably concluded that the nature of the offense did not favor a
lower bail. 

B. Ability to make bail

 To show that he is unable to make bail, a defendant generally must show that
his funds have been exhausted. See Ex parte Willman, 695 S.W.2d at 754 (citing Ex
parte Dueitt, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975). Unless he has shown that
his funds have been exhausted, a defendant must usually show that he made an
unsuccessful effort to furnish bail before bail can be determined to be excessive. Ex
parte Willman, 695 S.W.2d at 754; see Ex parte Williams 467 S.W.2d 433, 434 (Tex.
Crim. App. 1971). If the defendant indicates a financial inability to procure a surety
bond, the court will not require him "to do a useless thing." Ex parte Dueitt, 529
S.W.2d at 532-33. 

 The ability or inability of an accused to make bail, however, even indigency,
does not alone control in determining the amount of bail. Ex parte Charlesworth, 600
S.W.2d 316, 317 (Tex. Crim. App. 1980). If the ability to make bond in a specified
amount controlled, the role of the trial court in setting bond would be completely
eliminated, and the accused would be in the position to determine what his bond
should be. Ex parte Miller, 631 S.W.2d 825, 827 (Tex. App.--Fort Worth 1982, pet.
ref'd). 

 In this case, appellant's mother, Mary Leyva, testified about appellant's ability
to make bond as follows:

 Q: How much money do you and your husband combined make
weekly or monthly?


 A: I don't know. I guess --


 Q: What are you-all's combined incomes?


 * * * *


 Q: How much do you make a week, approximately?


 A: Bi-weekly. I get paid bi-weekly.


 Q: I know. But how much is that?


 A: 1100.


 Q: How much does your husband make? Does he get paid by the
week or -- 


 A: Every two weeks.


 * * * * 


 Q: How much does he bring?


 A: I haven't seen the last check stub.


 Q: Approximate amount?


 A: I'd say about 28.



 Q: Now, if the Judge set a bond, what kind of bond do you think that
you and your husband, if the family and everybody got together,
could make?


 A: I have no idea right now.


 Q: So, basically, you have about 3,000--a little over 3,000 every two
weeks coming in?


 Significantly, appellant did not testify and did not provide any evidence
whatsoever about his own financial condition. And, although appellant's mother did
provide evidence of her and her husband's weekly income, appellant himself made
no effort to determine whether he could obtain a bond to make bail, or what amount
of bail he would be able to make. Thus, the trial court could have determined that the
evidence supports the bail set. See Ex parte Chavful, 945 S.W.2d 183, 186-87 (Tex.
App.--San Antonio 1997, no pet.) (holding that bail reduction unwarranted when,
among other facts, defendant put on no evidence of his own individual resources). 

 Even if appellant had established that he could not make bail, however, this
element would not control over all other considerations. See Ex parte Charlesworth,
600 S.W.2d at 317.

C. Sufficient Bail to Assure Appearance But Not Oppress

 Appellant's mother testified that when her son was arrested for felony
possession of between five and 50 pounds of marihuana, he was released on bail, he
always appeared for his court hearings, and his bail was never forfeited. The State
concedes that prior compliance with bail terms is a factor in appellant's favor, but
points out that the stakes are significantly higher now that appellant has been charged
with a capital offense. The State also points out that, after the date of the murder in
this case, appellant was charged with committing an aggravated robbery at a jewelry
store in Nueces County, for which he is currently out on bond. Thus, appellant faces
the death penalty or life in prison, which is significantly higher than the penalty he
faced for the marihuana case, thus making the risk of his flight greater. 

 The State also argues that, despite his compliance with previous bonds,
appellant has shown that he does not abide by court-ordered conditions, as evidenced
by the fact that he violated the terms of his deferred adjudication probation in the
felony marihuana case and, as a result, was adjudicated guilty and sent to prison. 
Finally, the State points out that, while appellant's mother testified that she believed
her son would make all court appearances if he were given bail, appellant himself
never testified or made such assurances.

 Thus, the trial court may have concluded that a reasonably high bail is
necessary to ensure that appellant will appear at trial. In addition, the record contains
nothing to indicate that the trial court rendered its decision for the purpose of forcing
appellant to remain incarcerated pending trial. See Ex parte Harris, 733 S.W.2d 712,
714 (Tex. App.--Austin 1987, no pet.) (per curiam) (lowering bond because trial
judge stated, "I'd rather see him in jail than to see someone's life taken. . . ."). 

D. Future Safety of Victim and Community

 Finally, article 17.15 of the Code of Criminal Procedure requires that "[t]he
future safety of a victim of the alleged offenses and the community shall be
considered." Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005). 

 Appellant's mother testified that her son had never been involved in a gang and
that he was not a violent or dangerous person. On cross-examination, however,
appellant's mother admitted that she did not know that her son was suspected of
helping to dispose of a dismembered body that was discovered in Galveston Bay. 
Appellant's mother also admitted that she did not know that her son had attempted
to conspire with his co-defendant in this case, Robert Narvez, to intimidate or kill a
witness. 

 In contrast, Officer D. Rosales of the Houston Police Department testified that
appellant was a member of the Hermanos Pistoleros Latinos gang (HPL). According
to Rosales, HPL is involved in drug trafficking and violent crimes such as robbery
and murder. Rosales also testified that he had information that led him to believe that
appellant was a violent person. Rosales also testified that he believed that appellant
posed a danger to witnesses in the case. A photograph was introduced at the habeas
corpus hearing that showed appellant and several other men standing in front of a
SUV that matched the vehicle used during the crime. Several men in the photo were
flashing gang signs.

 The trial judge, as factfinder, was entitled to believe Officer Rosales, disbelieve
appellant's mother, and conclude that appellant posed a threat to witnesses and the
community.

E. Other Factors

 Additional factors to consider in reviewing a bond decision include appellant's
work record, family ties, length of residency, past criminal record, conformity with
the conditions of any previous bond, other outstanding bonds, and aggravating factors
involved in the offense. See Rubac, 611 S.W.2d at 849-50; Aviles v. State, 23 S.W.3d
74, 80 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). 

 Regarding appellant's work record, residency, and family ties, appellant's
mother testified that appellant grew up in Houston. According to Leyva, appellant
was a straight-A student at Easton Middle School and Furr High School before
dropping out in the 12th grade. Leyva also testified that appellant is married, but he
does not live with his wife or support their child. Appellant was living in Humble
with his aunt at the time he was arrested, and, if released on bail, plans to resume
residency there. After obtaining his general equivalency diploma, appellant worked
at a collection agency, Preferred Healthcare Services, and was in cell phone sales for
Sprint and Cingular. The record is unclear regarding whether appellant was
employed at the time of his arrest in this case. 

 We have already considered what little information the record provides on
appellant's work record, family ties, and length of residency. Thus, we turn to
appellant's criminal record. The record shows that appellant was previously
convicted of possession of between five and 50 pounds of marihuana and received a
sentence of five years' deferred adjudication. Appellant failed to comply with the
terms of his deferred adjudication probation, which was revoked, and he was
sentenced to four years' confinement in the penitentiary. Appellant has also been
charged with an aggravated robbery in Nueces County and is currently out on bond
in that case. In the Nueces County case, appellant is alleged to have robbed someone
at a jewelry store at gunpoint.

 Based on the totality of these additional factors, the trial court could have
determined that the evidence supports maintaining the present bail amount. 

Conclusion


 Given appellant's criminal history, the violent nature of the alleged crime and
the seriousness of the punishment appellant faces, appellant's potential danger to
witnesses and the community, and appellant's lack of evidence regarding his financial
condition or ability to make bond, we conclude that the trial court did not abuse its
discretion in setting bail at $1,000,000.

 We affirm the order of the trial court.


 

 

 Sherry Radack

 Chief Justice


Panel consists of Chief Justices Radack and Justices Higley and Nuchia. (1)

Do not publish. Tex. R. App. P. 47.2(b). 

1.