**Affirmed and Memorandum Opinion filed June 9, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00508-CR

---

**BRYAN SAUNDERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 14**
**Harris County, Texas**
**Trial Court Cause No. 1929966**

---

# M E M O R A N D U M   O P I N I O N

In this appeal from a conviction for driving while intoxicated, appellant Bryan Saunders asserts the trial court erred in denying his motion to suppress. We affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

A police officer conducted a traffic stop of appellant's vehicle, resulting in appellant's warrantless arrest and the subsequent charge of driving while intoxicated (DWI). Appellant filed a pretrial "First Amended Motion to Suppress" asserting that the

traffic stop was not supported by reasonable suspicion and any evidence concerning appellant's condition, his blood-test results, the officers' observations of appellant's demeanor, or field tests was not admissible. The trial court conducted a hearing on appellant's motion to suppress.

At the hearing, Officer T. Hays testified that appellant's vehicle approached in Hays's lane of traffic in approximately the 5900 block of Beltway 8. This movement drew Hays's attention, and he followed appellant's vehicle for approximately two to two-and-a-half miles. Hays stopped appellant after appellant failed to signal a right-hand turn. The video from Hays's dashboard camera was played for the trial court. While the video was playing, Hays testified that he saw several traffic violations before stopping appellant. He saw appellant's vehicle cross double white lines as he was exiting the highway; and when appellant turned right he failed to turn into the closest right –hand lane.

In an affidavit attached to appellant's first amended motion to suppress, appellant stated:

> On November 15, 2013 I was driving my automobile on Beltway 8 traveling from 1-45 to Fairmont Parkway in Pasadena. I was traveling the speed limit and never weaved out of my lane of traffic. Each time I changed lanes, I gave the appropriate signal. When I approached Fairmont Parkway, I entered the turn lane and turned. I did not violate a traffic law at the intersection nor anywhere between 1-45 and Fairmont Parkway. A peace officer stopped my vehicle without reasonable suspicion, without probable cause, and without a violation of Texas law. The peace officer that stopped me did not have an arrest warrant nor a search warrant for me. I was stopped without my consent. I am requesting the court to suppress all evidence obtained by the state due to the stop of my automobile and my arrest on November 15, 2013 because of the above actions of the peace officer.

The trial court found the following:

> I believe that I have seen multip1e traffic violations. I do believe that his

2

truck crossed over the double white line. I do believe he crossed over the fog line. I didn't see a signal from the straight lane only to the right turn curve, whichever lane, I didn't see him signal going into that lane. He didn't look like he was driving bad, but he violated several traffic laws. But he wasn't—I didn't see him swerving and weaving and whatever have you. He was driving like most people used to drive, but he violated some traffic laws. And so I think the officer had a good reason to pull him over.

The trial court further determined that traffic violations occurred in the officer's presence, and the officer had "probable cause" to make the traffic stop.

After appellant filed his appellate brief, this court abated the appeal to permit the trial court to file findings of fact and conclusions of law. *See State v. Cullen*, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006). In support of the decision to deny appellant's motion to suppress the trial court filed findings of fact and conclusions of law. The trial court found, in pertinent part:

### Findings of Fact

1. Deputy T. Hays with the Harris County Sheriff's Department testified credibly during the hearing.

2. On November 15, 2013, Hays observed the defendant, BRYAN SAUNDERS, driving a Ford pickup, a motor vehicle, on Beltway 8, Harris County, Texas.

3. Hays observed the defendant weave in and out of the lane he was driving in several times.

4. Hays continued to follow the defendant for two to two and a half miles and observed him fail to signal a right turn, cross double white lines, cross three lanes of traffic at one time, fail to signal for more than a hundred feet continuously, and turn too wide.

5. Hays pursued the defendant in his patrol car with his emergency equipment on to investigate for a possible DWI.

6. Hays made contact with the defendant and subsequently arrested him for DWI.

7. Hays wrote an offense report and a search warrant for the defendant's blood.

8. Though Hays observed the defendant make several traffic violations, he only included the two traffic violations in his offense report and affidavit for the warrant.

* * * * *

11. Hays's patrol vehicle was equipped with the ability to record traffic stops, and made such a recording during the stop of the defendant on November 15, 2013.

12. The video began recording 30 seconds to one minute prior to Hays turning on his emergency equipment, but it did not catch all the traffic violations Hays observed.

13. The Court viewed Exhibit 1 (DWI Video) and observed it captured the defendant commit several traffic violations.

14. The Court finds that T. Hays was a credible witness and accepts his testimony as true.

15. The Court finds that the defendant was not a credible witness and does not accept his testimony as true.

### Conclusions of Law

1. Because the defendant failed to maintain a single lane of traffic, failed to signal a right turn, crossed a double white line, crossed a fog line, crossed three lanes of traffic at one time, fail[ed] to signal for more than a hundred feet continuously, and turned too wide, Deputy Hays had a reasonable suspicion he committed a traffic offense and the defendant was lawfully detained.

2. Based on the totality of the circumstances when the defendant committed multiple traffic violations, including failure to signal intent to turn and crossing a double white line, the officer had probable cause to suspect that the defendant was in violation of the transportation code and possibly intoxicated. Deputy Hays had legal justification to stop the defendant. Subsequently, he developed reasonable suspicion to suspect that the defendant was driving while intoxicated and was justified in arresting the defendant for his numerous violations.

3. The video recording supported the officer's testimony of traffic violations and concern that the appellant may be intoxicated.

The trial court denied appellant's motion to suppress, and, after accepting appellant's "guilty" plea, sentenced him, pursuant to a plea bargain agreement, to 180

4

days in the Harris County Jail, suspended for one year of community supervision.

## II.    ISSUE AND ANALYSIS

### A.    Did the trial court err in denying appellant's motion to suppress?

Appellant contends the trial court erred in denying his motion to suppress because (1) Hays, in his report, only articulated traffic violations of a lane change and an illegal right turn, which appellant argues were not illegal; and (2) the trial court improperly based its decision on the dashboard video.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We afford the same amount of deference to the trial court's application of the law to facts if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id*. We review de novo the trial court's application of the law to facts if resolution of those ultimate questions does not turn on an evaluation of credibility and demeanor. *Id*. If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Hays was justified in conducting the traffic stop based on reasonable suspicion that appellant had violated sections 544.004 and 545.104 of the Texas Transportation Code. *See* Tex. Transp. Code Ann. §§ 544.004, 545.104 (West, Westlaw through 2013 3d C.S.). On appeal appellant argues that in his offense report Hays only noted that

5

appellant failed to maintain a single lane and failed to signal. Appellant relies on *Aviles v. State*, 23 S.W.3d 74 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd), to support his position that the failure to signal and failure to maintain a single lane are not traffic violations. In *Aviles*, this court found the police officer did not have reasonable suspicion to stop the defendant because he did not make an unsafe lane change in violation of section 545.060 of the Transportation Code. *Id.* at 78–79. The defendant in *Aviles* signaled his intent to change lanes and deliberately moved across two lanes of traffic to avoid a collision with a vehicle on the shoulder. *Id.* at 75. This court determined that because Aviles's multiple-lane change was not accomplished in an unsafe manner, the police officer did not have a reasonable basis for believing Aviles had committed a ticketable traffic offense. *Id.* at 78.

A police officer lawfully conducts a temporary detention when the officer has reasonable suspicion that an individual is involved in criminal activity. *See Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). Reasonable suspicion requires more than a hunch; it exists only when an officer has specific, articulable facts that, taken together with reasonable inferences from those facts, would lead the officer reasonably to conclude that the person detained is, has been, or soon will be, engaging in criminal activity. *See id*. The reasonable-suspicion determination is an objective one made by considering the totality of the circumstances. *See id*. The State need not show that appellant actually committed a traffic offense, but only that the officer reasonably suspected that appellant was committing an offense. *See Madden v. State*, 242 S.W.3d 504, 508 n.7 (Tex. Crim. App. 2007). An officer's stated purpose for a stop can neither validate an illegal stop nor invalidate a legal stop because its legality rests on the totality of the circumstances, viewed objectively. *See Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). An officer's stated reason for a stop is not controlling if there is an objectively reasonable basis for the stop as shown by the

evidence. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Thus, we must determine whether the objective facts to which Hays testified show that he had reasonable suspicion to justify stopping appellant regardless of the number of traffic violations Hays listed on the police report.

The police report is not part of our appellate record. Hays's testimony reflects that he saw several traffic violations, but only listed two in his report. The dashboard video showed appellant's vehicle crossing the double white line, failing to signal a right turn, and failing to remain in the right lane after turning. Given the totality of the circumstances, Hays's observations and testimony are sufficient to demonstrate that appellant violated at least one traffic law, and therefore Hays was justified in stopping appellant based on a reasonable suspicion that appellant was in violation of the Texas Transportation Code. *See Cook*, 63 S.W.3d at 927–28. We overrule appellant's first issue.

## B. Did the trial court err in considering the video in denying the motion to suppress?

In his second issue, appellant argues that in making the statement, "I believe that there was probable cause to make the stop based on what's on the video," the trial court used an improper legal standard in reaching its determination. Appellant argues that the trial court relied on information in the video that was not within Hays's "rationale."

In determining whether an officer is justified in making a *Terry* stop, courts determine whether a reasonable officer in the same situation would believe a crime had been or was being committed. *State v. Duran*, 396 S.W.3d 563, 569–70 (Tex. Crim. App. 2013) This objective standard requires reviewing courts to place themselves in the shoes of the officer at the time of the inception of the stop—considering only the information actually known by or available to the officer at that time. *Martinez v. State*, 348 S.W.3d 919, 925 (Tex. Crim. App. 2011). The court then asks, "[W]ould the facts

available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

Normally, this inquiry presents no significant problem, for most traffic stops are made based upon the direct observations of unambiguous conduct or circumstances by the stopping officer. *Duran*, 396 S.W.3d at 569. Information that the officer either acquired or noticed after a detention or arrest cannot be considered. *Atkins v. State*, 919 S.W.2d 770, 774 (Tex. App.–Houston [14th Dist.] 1996, no pet.) ("Subsequently discovered facts or later-acquired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of the arrest."). A detention is either good or bad at the moment it starts. *Duran*, 396 S.W.3d at 570. "A post-hoc rationalization for a traffic stop cannot be made on the basis of information learned personally or acquired from other officers after the stop." *Id.*

Appellate courts afford almost total deference to the trial court's determination of facts when they review a suppression ruling. *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). That same deferential standard of review applies to a trial court's determination of historical facts even when that determination is based on a videotape recording admitted into evidence at a suppression hearing. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). Although appellate courts may review de novo "indisputable visual evidence" contained in a videotape, the appellate court must defer to the trial court's factual finding on whether a witness actually saw what was depicted on a videotape. *See State v. Gobert*, 275 S.W.3d 888, 891–92 & n. 13 (Tex. Crim. App. 2009) ("[T]he trial judge viewed the DVD with the State's transcript in hand, and he found that the appellee did in fact actually declare, 'I don't want to give up any right though, if I don't got no lawyer.' The record supports that conclusion, even as it might also support a different conclusion. Therefore, we will not second-guess the trial court's determination of the facts. . . . Under these circumstances, it is appropriate

8

that we defer to the trial court's primary fact-finding function."). We review a trial court's application of search-and-seizure law to the facts de novo, and we will affirm the ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *Weaver*, 349 S.W.3d at 525.

The question in today's case is whether Hays's observations independent of the video were sufficient to create a reasonable suspicion that appellant committed a traffic offense. The trial court decides that fact. *See Duran*, 396 S.W.3d at 571. Appellate courts must view the trial court's factual findings in the light most favorable to its conclusion.

At the hearing, Hays testified that he saw appellant cross double white lines as appellant exited the freeway, fail to signal more than one hundred feet before turning, cross three lanes of traffic at once, and make a right turn too wide, failing to turn into the nearest lane. After hearing Hays's testimony and reviewing the video, the trial court determined that appellant committed multiple traffic violations, and that the video recording supported Hays's testimony of traffic violations. In its conclusions of law, the trial court concluded that Hays had reasonable suspicion to stop appellant because appellant "failed to maintain a single lane of traffic, failed to signal a right turn, crossed a double white line, crossed a fog line, crossed three lanes of traffic at one time, fail[ed] to signal for more than a hundred feet continuously, and turned too wide." The trial court found that the video captured appellant committing several traffic violations, but also found that Hays saw appellant commit several traffic violations. The trial court concluded that the video "supported the officer's testimony of traffic violations[.]"

The trial court incorrectly noted at the hearing that Hays could stop appellant for "traffic violations [that] occurred in the presence of the officer" rather than those the officer actually observed. *See Duran*, 396 S.W.3d at 570 (trial court cannot base finding of reasonable suspicion on "post-hoc rationalization" of violations officer observed). Although this reasoning is incorrect, the trial court's ruling can be upheld on Hays's

testimony that he saw those violations at the time he stopped appellant, and that he did not rely solely on the video submitted later at the hearing. *See Weaver*, 349 S.W.3d at 525 (appellate court will affirm the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case).

Hays testified, and the trial court found, that appellant committed multiple traffic violations, including failure to signal intent to turn and crossing a double white line. The trial court further found that Hays was credible and that the video evidence supported the officer's testimony. Therefore, the officer was justified by reasonable suspicion to conduct an investigative detention of appellant. *See LeCourias v. State*, 341 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We overrule appellant's second issue.

We affirm the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Do Not Publish — Tex. R. App. P. 47.2(b).