Garry Allyn DILTZ, Appellant,

v.

STATE of Texas, Appellee.

No. 11–04–00078–CR.

Court of Appeals of Texas, Eastland.

July 28, 2005.

Claire Mehaffey, John R. Saringer, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, L.L.P., Abilene, for appellant.

James Eidson, District Attorney, Patricia Dyer, Assistant Criminal Dist. Atty's Office, Abilene, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

JIM R. WRIGHT, Justice.

Garry Allyn Diltz pleaded no contest to possessing certain chemicals used to manufacture methamphetamine. Prior to his

plea, appellant filed a motion to suppress evidence. The trial court denied the motion. The trial court assessed appellant's punishment at five years confinement in the Texas Department of Criminal Justice, Institutional Division. We affirm.

On November 21, 2002, Officer David Watkins of the Abilene Police Department was working in plain clothes for the Criminal Investigation Division; he was driving an unmarked police car. As the officer was driving east on South 1st Street, he saw appellant drive abruptly onto the shoulder of the roadway and "whip[ ] back" into the inside traffic lane. At this point, the officer decided to follow appellant. At the corner of South 1st Street and Sayles, the officer saw appellant approach the intersection too fast; he almost hit another motorist. As he continued on South 3rd Street, appellant drove near the center of the roadway, "uncomfortably close" to the other lane. The officer thought that appellant was intoxicated. At the corner of South 16th Street and Sycamore, when appellant noticed that he was being followed, he stopped his vehicle in the middle of the road, blocking the street. The officer got out of his car, walked to appellant's vehicle, identified himself as a police officer, and asked appellant to step out of the car. He also asked appellant if he had any weapons on him. Appellant acknowledged that he did. The officer performed a pat-down search of appellant and found three pocket knives in appellant's pocket, one of which was a switchblade, a prohibited weapon. Appellant was immediately arrested for possessing a prohibited weapon.

After Officer Watkins placed appellant under arrest, he and other police officers who had arrived at the scene inventoried appellant's vehicle. In a search of the trunk, they found a blue suitcase that contained many items that Officer Watkins

believed were precursors to "Nazi meth labs," including 8 cans of starter fluid that contained ether and 16 unopened boxes of allergy decongestants that contained pseudoephedrine. The discovery of these items led to appellant's indictment for possession and transportation of ethyl ether with intent to unlawfully manufacture a controlled substance, methamphetamine.

In two points of error, appellant argues that the trial court erred in denying his motion to suppress the evidence found in his vehicle because (1) his detention during the traffic stop unlawfully extended beyond the purpose of the initial stop and (2) the evidence was obtained through an unlawful inventory search.

■■■ A trial court's denial of a motion to suppress is generally reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Cr.App.1999). In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical fact as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Cr.App.1997). We must afford the same amount of deference to the trial court's rulings on "mixed questions of law and fact" if the resolution of those ultimate questions turns on an evaluation of witness credibility and demeanor. *Guzman v. State, supra.* Appellate courts, however, review de novo "mixed questions of law and fact" not falling within the previous category. *Guzman v. State, supra.* We must view the record in the light most favorable to the trial court's ruling and sustain the trial court's ruling if it is reasonably correct on any theory of law applicable to the case. *Guzman v. State, supra.*

■■ In his first point of error, appellant asserts that his detention by the officer unlawfully extended beyond the purpose of the initial stop. We disagree.

When he approached appellant, the officer realized immediately that appellant was not intoxicated. Instead, appellant appeared to be tired. Appellant was "constantly yawning and could barely hold his eyes open." Relying on *Davis v. State*, 947 S.W.2d 240 (Tex.Cr.App.1997), appellant contends that, as soon as the officer determined appellant was not intoxicated, the detention should have ended. In *Davis*, the Court of Criminal Appeals held that, once the reason for a traffic stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *Davis v. State, supra.* at 243. We do not believe, however, that the officer's actions in this case constitute a "fishing expedition" for unrelated criminal activity.

We first note that this was not a routine traffic stop. The officer testified that he did not actually stop appellant. Because the officer was driving without his red emergency light in an unmarked vehicle, making a traffic stop would have been "abnormal" for him. Instead of stopping appellant on his own, the officer wanted to follow appellant and watch him until he could get a marked patrol unit to stop appellant. Before a marked patrol unit could arrive, appellant, on his own initiative, stopped his car in the middle of the road after he noticed that he was being followed. Because the officer was driving in an unmarked vehicle in plain clothes and without his emergency light, appellant had no way of knowing that he was being followed by a police officer until after the officer got out of his car, approached appellant, and showed him his badge.

We also note that in this case, unlike *Davis*, the officer's purpose in detaining appellant was not merely to determine if appellant was intoxicated. In this case, the officer detained appellant for failing to drive in a single lane of traffic. *See* Tex. Transp. Code Ann. § 545.060(a) (Vernon 1999). When the officer determined that appellant was not intoxicated, this determination did not complete the purpose of the stop.

In traffic stop situations, the officer may perform certain activities that are incident to the stop, including demanding identification, a valid driver's license, proof of insurance, and checking for outstanding warrants. *See Davis v. State, supra* at 245 n. 6. In *Davis*, the officers went beyond these activities and continued to detain the suspect after identifying him, running a background check, asking twice for consent to search his vehicle, and calling in a canine unit to sniff the vehicle for drugs. *Davis v. State, supra* at 241.

In this case, appellant's detention prior to his arrest was brief and distinguishable from the detention in *Davis*. When the officer first contacted appellant, he asked appellant to step out of the car. Once a motor vehicle has been lawfully detained for a traffic violation, police officers may order the driver to get out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Next, the officer asked appellant "if he had any weapons on him." Because of the inordinate risk confronting police officers when they approach people in automobiles, we believe such a question is related to officer safety and is, therefore, permissible. *See Pennsylvania v. Mimms, supra.* at 110, 98 S.Ct. 330. Appellant acknowledged that he had weapons.

The officer performed a patdown search on appellant. The purpose of a pat-down search is officer safety. *O'Hara v. State*, 27 S.W.3d 548, 555 (Tex. Cr.App.2000). A pat-down search is substantially less intrusive than a standard search requiring probable cause. *O'Hara v. State*, supra. at 550–51. Such searches

will be justified only where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. *See Carmouche v. State,* 10 S.W.3d 323, 329 (Tex. Cr.App.2000). Appellant's admission that he had weapons was a fact sufficiently specific to justify the pat-down search.

Once the officer discovered that appellant was carrying a prohibited weapon, appellant was immediately placed under arrest for possession of a prohibited weapon. There was no prolonged and unnecessary period of detention prior to appellant's arrest as there was in *Davis.*

Appellant also asserts that this case is similar to the traffic stop in *United States v. Valadez,* 267 F.3d 395 (5th Cir.2001). In that case, the suspect was stopped for appearing to have an expired vehicle registration sticker on his front windshield and illegal window tinting on other windows. *United States v. Valadez, supra* at 396. Upon stopping the suspect, however, the officer realized that the registration sticker was valid and that the window tinting was proper. *United States v. Valadez, supra.* Nevertheless, the officer continued to detain the suspect. *United States v. Valadez, supra.* The Fifth Circuit held that, once the officer determined that the suspect had a proper registration sticker and proper window tinting, further detention was not lawful. *United States v. Valadez, supra* at 398.

We believe this case, however, is distinguishable. In *Valadez,* the officer continued to detain the suspect after the purpose of the traffic stop was complete. *United States v. Valadez, supra.* In this case, as we have already explained, the purpose of the traffic stop was not complete when the officer determined that appellant was not intoxicated. We overrule appellant's first point of error.

■ In his second point of error, appellant asserts that the evidence of his criminal activity was obtained following an unlawful inventory search. We disagree.

■ An inventory search is constitutionally permissible as long as it is not a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Inventories conducted pursuant to standard police procedures are considered reasonable under the Fourth Amendment. *See South Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). During an inventory search, police may open closed containers so long as they do so in accordance with standardized procedures. *Colorado v. Bertine,* 479 U.S. 367, 376, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)(Blackmun, J., concurring); *see also Wells v. State,* 968 S.W.2d 483, 486 (Tex.App.-Eastland 1998, pet'n ref'd), *cert. den'd,* 526 U.S. 1021, 119 S.Ct. 1259, 143 L.Ed.2d 355 (1999) (holding that the Texas Constitution does not provide greater protection from inventory searches than does the Fourth Amendment of the United States Constitution).

We find that the inventory search of appellant's vehicle was performed in accordance with standard police department policy. The officer testified that the police department has a written inventory policy. The officer also testified that, pursuant to police department policy, a wrecker was called prior to the inventory search. The officer further testified that the inventory search was not begun until after appellant was placed under arrest. There is no evidence in the record that the department's standardized procedures were not followed. There is also no evidence in the record to support appellant's contention that the inventory search was a "mere pretext for investigation." We overrule appellant's second point of error.

The judgment of the trial court is affirmed.