

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-07-186-CR

WALTER RILEY ROBBINS                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.    Introduction

A jury convicted Appellant Walter Riley Robbins of driving while intoxicated. Appellant pleaded true to a habitual offender enhancement paragraph, and the jury assessed punishment at four years' incarceration and a $1,500.00 fine. In three points, Appellant argues that the trial court erred by

---

[1]*See* Tex. R. App. P. 47.4.

denying his motion to suppress, and by denying his requested charge instruction regarding the arresting officer's stop of his vehicle and that the evidence is factually insufficient to prove that he was intoxicated. We affirm.

## II.     Factual and Procedural Background

On May 19, 2004, State Trooper Scott Meeks stopped the vehicle Appellant was driving. Appellant was arrested for DWI. Appellant filed a motion to suppress all evidence "seized or obtained" as a result of the stop, alleging that he "was seized without any reasonable suspicion that he was engaged in criminal activity." The trial court denied his motion.

### A.     Hearing on Motion to Suppress

At the suppression hearing, Meeks testified for the State. Meeks testified that on the evening of May 19, he was driving along Interstate 35 "enforcing traffic laws." Meeks stated that he observed a 2002 black Lincoln Continental attempting to pass him. He said that the vehicle caught his attention because it was "moving back and forth within [its] lane." After following the vehicle for roughly one-half mile, Meeks testified that he observed that the passenger was not wearing a seat belt. Meeks initiated a traffic stop.

Meeks said he activated his over-head lights, but the vehicle did not respond by pulling over. Meeks testified that he would have expected the vehicle to immediately pull over to the shoulder. Meeks continued to follow the

2

vehicle for another one-half mile before activating his siren in an attempt to stop the vehicle. Meeks said that, after activating his siren, it took up to an additional thirty seconds for the vehicle to eventually pull over. Meeks said that the vehicle "actually started to pull over onto the shoulder and then pulled back onto the interstate and then he pulled back on the shoulder again."

Meeks testified that while he was attempting to pull the vehicle over he observed "a lot of movement, furtive movements inside the vehicle specifically by the passenger. [The passenger] was moving to the center of the vehicle, back to the passenger side, back to the center and looked like to me [like the passenger] was attempting to hide something under the front seat."[2]

Meeks stated that he used his public announcement ("PA") system to instruct Appellant to exit the vehicle and that he initially handcuffed Appellant,[3] but later removed the handcuffs. Meeks testified that Appellant was not free to leave while he was handcuffed or after he had removed the handcuffs.

---

[2]The video that was admitted into evidence is sometimes out of focus, but the passenger in Appellant's vehicle can be seen at this point leaning over to the middle of the vehicle. At other times in the video, the driver's and passenger's silhouettes cannot be clearly identified.

[3]The video's audio is sometimes scrambled, however, at this point Meeks can clearly be heard telling Appellant, "You're being handcuffed right now, not because you're under arrest, but just for my safety."

3

Appellant testified that he did not initially pull over for Meeks because he thought Meeks was attempting to pull over someone other than himself. Appellant stated, "[I]t was on the highway and there was lots of traffic and I knew I hadn't done anything to warrant being pulled over." When asked why he did not immediately pull over when Meeks activated his siren, Appellant stated, "I don't remember." Appellant testified that Meeks's attitude toward him was "scary" and intimidating.

The State then played the video tape from Meeks's patrol car's onboard video camera. The trial court denied Appellant's motion to suppress and called in the jury.

**B.    The Jury Trial**

Meeks also testified before the jury. He testified to many of the same things he had stated during the suppression hearing. In addition, the state played the video from the onboard camera for the jury as Meeks described the events in the video.

While the jury watched the video, Meeks testified that he remained in his patrol car and used the PA system to instruct Appellant to get out of his car because "I thought there was a possibility that they might have been hiding a weapon" and "I don't know why [the vehicle occupants are] moving around a lot and I don't know why they're not stopping. So for my safety I'm not going

4

to walk up to that car . . . ." Meeks stated that he found two half-full wine coolers in the front floorboard.[4]

While the video was still playing, Meeks testified that another officer arrived on the scene and explained to him that there had been a "call [in concerning Appellant's vehicle] for erratic driving and weaving in and out of traffic." Meeks was unaware of the call at the time he initiated the stop. Meeks also said that by this time he had arrested the passenger and placed her in the back of his vehicle.[5] Meeks further stated that he had not yet made a determination whether to arrest Appellant for DWI but that he did have "a couple of clues of impairment." Meeks also testified that despite Appellant telling him of two different locations where Appellant's driver's license would be, Appellant never produced a driver's license and only had an identification card with him.

---

[4]The video does clearly depict that when the passenger exited the vehicle, she left the passenger door open. When Meeks approached the vehicle, he leaned inside the vehicle, pulled out two bottles, placed them on the roof of the vehicle, and then took both bottles and poured liquid from them into the ditch.

[5]The video—and audio from the video—confirm that Meeks had arrested the passenger by this time and that before he called dispatch concerning Appellant's identification, another officer arrived and advised Meeks that a vehicle matching the description of the vehicle Appellant was driving had "a call out on it for erratic driving."

5

In an effort to determine if Appellant was intoxicated, Meeks said that he first performed the portable breath test on Appellant.[6] Meeks testified that the portable breath test indicated the presence of alcohol in Appellant's system. Meeks then testified that he is certified to administer and did administer a number of standard field sobriety tests including the horizontal gaze nystagmus test, the nine-step and turn test, and the one-legged stand test. Meeks also testified that Appellant displayed six of six possible clues for the horizontal gaze nystagmus test. Meeks stated that he "assigned" two clues to Appellant on the nine-step and turn test, but "if you want to really go by the manual, that's -- you know, most officers would probably assign him five clues, and I only assigned him two." Meeks testified that he observed three of four possible clues when he conducted the one-legged stand test on Appellant. Meeks then stated that he conducted a nonstandardized field sobriety test, a "divided attention test," but Meeks never testified specifically whether Appellant failed

[6]Although Meeks did not testify concerning the status of Appellant's license, the video clearly reveals that Meeks called in to his dispatcher and learned that Appellant's license was suspended before Meeks conducted the field sobriety tests.

6

the test.[7]  Meeks also stated that during his encounter with Appellant, Appellant said he drank "one margarita" that evening.  Meeks testified that he ultimately placed Appellant under arrest for DWI.

Three witnesses, other than Appellant himself, testified before the jury on Appellant's behalf — Ira Sherrill, Charley Rodden, and Elaine Hudnall,[8] who was the passenger in the vehicle the night Appellant was arrested.  Sherrill and Rodden both testified that Appellant had only one margarita that evening and that Appellant was asked to drive Hudnall home because Hudnall was intoxicated and unable to drive and Appellant was not intoxicated.

Hudnall testified that she had asked to be driven home because she was unable to drive and that when she and Appellant had stopped to buy gas, she purchased a four-pack of wine coolers.  She testified that after getting gas she "opened the wine cooler[s], one for me . . .  one for him.  And we left to go on home."  But she said that Appellant did not drink his wine cooler.

---

[7]The video shows that Meeks instructed Appellant to touch his thumb to each of his each of his fingers while counting and Appellant was unable to perform the test as instructed.  At this point Meeks informed Appellant that he was under arrest and handcuffed him again.

[8]During the trial, Elaine Hudnall was also referred to as Ms. Sauder by Appellant's counsel.

7

Appellant testified that earlier in the evening he had attended a retirement party for a friend. Appellant said he initially ordered a margarita that was not satisfactory. He said that he asked the waiter to bring him a new one and that after more than twenty minutes the waiter did. But Appellant testified that he did not consume the entire drink. Appellant testified that roughly an hour passed between when the waiter brought him the replacement drink and when he volunteered to drive Hudnall home. Appellant admitted that when Meeks asked him when and how much he had to drink that night, he told Meeks an incorrect time because he wasn't "thinking clearly" and simply wanted to give Meeks "an answer so [he would stop questioning him]." Appellant said he drove Hudnall home because "she was drunk" and had asked someone to drive her home. He testified that he did not ask Hudnall to purchase the wine coolers when they stopped for gas. And Appellant testified that he had not consumed any alcohol between the time he drank the one margarita earlier in the evening and when Meeks pulled him over.

Appellant again said that he did not initially pull over for Meeks because he "knew he hadn't done anything [wrong]" and that he thought Meeks was attempting to signal to him to slow down so that Meeks could pass him. Appellant said that he did not fully comply with Meeks's instructions when asked to exit the vehicle because he was "confused" by Meeks's having stated

8

at first to"keep your hands where I can see them" and then later stating "put your hands on top of your head."[9]

Appellant testified that when he was brought to jail he refused to provide a sample of his breath for testing. He also said that he had previously had his license suspended for refusing a breath test. He then testified that he had three prior convictions for DWI in Texas and one prior arrest for DWI in New Mexico. Appellant stated he did not remember if the New Mexico arrest ever resulted in a conviction.

**C.    The Jury Charge**

Appellant submitted to the trial court an additional instruction to be included in the jury charge. The court denied the submission. The requested instruction explained a person's rights under the Fourth Amendment to the United States Constitution and article 1, section 9 of the Constitution of the State of Texas. *See* U.S. CONST. amend. IV; Tex. Const. art. I, § 9. It further

---

[9]The video depicts that Meeks initially used his PA to say "Driver, step out of the car with your hands up, please." Appellant got out of the vehicle with his hands at his side. Meeks, using the PA, then said, "Keep your hands up where I can see them, step over here in this bar ditch." Appellant raised his hands. Then, as Appellant stepped into the ditch, he dropped his hands to his sides and Meeks, using the PA, stated "Keep your hands on your head." As Meeks began to address the passenger, Appellant again dropped his hands to his sides, and Meeks exclaims, "Driver! I said keep your hands on your head!"

9

describes the warrant requirement and a number of exceptions to the warrant requirement and then ends with this excerpt:

> Therefore, you are instructed that before you consider any evidence that was derived by either an investigative detention or arrest of the defendant for purposes of guilt or innocence, that the state has the burden of proof to prove beyond a reasonable doubt that any investigative detention and/or arrest was not in violation of the defendant's constitutional or Code of Criminal Procedure protections. Unless the state does so beyond a reasonable doubt, you are instructed to not consider any evidence derived from or stemming from the illegal acts.

The actual jury charge did not include instructions regarding Appellant's rights under the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution. Nor did the jury charge ask the jury to determine if Meeks's stopping Appellant was in violation of these rights. The jury charge was a standard jury charge asking the jury to determine whether Appellant was guilty of DWI.

## III. Discussion

### A. The Trial Court's Denial of Appellant's Motion to Suppress

In his first point, Appellant argues that the trial court erred by denying his motion to suppress evidence obtained when Meeks stopped Appellant. Appellant challenges both the initial stop and Meeks's continued detention of him. Appellant also argues that the wine coolers and the video displaying Meeks's discovery of them should have been suppressed.

10

### 1.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de

11

novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when, as in this case, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818 ; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

12

In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App.), *cert. denied*, 519 U.S. 1043 (1996). But this general rule is inapplicable when, as in this case, the parties consensually relitigated the suppression issue during trial on the merits. *Gutierrez*, 221 S.W.3d at 687; *Rachal*, 917 S.W.2d at 799. If the State raised the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have elected to re-open the evidence, and we may consider the relevant trial testimony in our review. *Rachal*, 917 S.W.2d at 799.

### 2. Discussion of Appellant's First Point

#### a. The Stop

In part of his first point, Appellant argues that Meeks's stopping of him "was based on a pretext without sufficient support for the stop." We are not persuaded by this argument.

Both the Fourth Amendment and article one, section nine of the Texas Constitution guarantee individuals the right to be free from unreasonable searches and seizures. *See* U.S. CONST. amend. IV; Tex. Const. art. I, § 9.

13

These rights do not forbid all searches and seizures, but only unreasonable searches and seizures. *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). An officer's stop of an automobile constitutes a seizure within the meaning of the Fourth Amendment and the search and seizure provision of the state constitution. *See Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *see also Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).

An automobile stop is justified when an officer has reasonable suspicion to believe that a traffic violation has occurred. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). The burden is on the State to demonstrate the reasonableness of the investigatory stop. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *Aviles v. State*, 23 S.W.3d 74, 79 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Whether or not an officer has reasonable suspicion is evaluated from an objective perspective. *Whren v. United States*, 517 U.S. 806, 811, 116 S. Ct. 1769, 1773 (1996); *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir.1999); *Aviles*, 23 S.W.3d at 77. In other words, looking at the facts available to the officer at the moment of the investigation, would a person of reasonable caution believe that

14

a traffic violation occurred. *Lopez-Valdez*, 178 F.3d at 288; *Aviles*, 23 S.W.3d at 77.

The failure to wear a seat belt while in the front seat of a vehicle is a violation of section 545.413 of the transportation code. *See* Tex. Transp. Code Ann. § 545.413 (Vernon Supp. 2008); *see also Tex. Dep't of Pub. Safety v. Torres*, 54 S.W.3d 438, 441 (Tex. App.—Fort Worth 2001, no pet.). Meeks testified that he observed that the passenger was not wearing a seat belt. He stated that he could see that the strap was not coming across the passenger's shoulder. Further, the video from Meeks's patrol car clearly depicts the passenger telling Meeks that she wore her seat belt "ninety-nine percent of the time." But when asked why she was not wearing one in this instance she answered, "I guess I just forgot." We hold that these facts, when viewed in the light most favorable to the trial court's denial of Appellant's motion to suppress, support that Meeks's stopping of Appellant's vehicle was justified by reasonable suspicion. Thus, we overrule this portion of Appellant's first point.

### b.    Continued Detention

In his first point Appellant also argues that Meeks effectively placed him under arrest when he handcuffed him on the side of the road prior to searching his vehicle. Thus, Appellant argues that the search was an illegal search and all evidence of the search should have been suppressed. The State counters

15

that what Meeks did was continue to detain Appellant based on his observations that Appellant might be intoxicated. We agree that Meeks's continued detention was justified.

In a traffic stop situation, the police may ask for identification, a valid driver's license, and proof of liability insurance. *Davis*, 947 S.W.2d at 244. Police may check for outstanding warrants. *Id.* Police officers may also order the driver to get out of the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977); *see also Diltz v. State*, 172 S.W.3d 681, 685 (Tex. App.—Eastland 2005, no pet.). Further, as a general rule, officers may use such force as is reasonably necessary to effect the goal of the stop—investigation, maintenance of the status quo, or officer safety. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997) (*citing United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989)). Under certain circumstances, the handcuffing of the vehicle's occupants may be appropriate to effectuate officer safety, such as when it is necessary to thwart the suspect's attempt to frustrate further inquiry. *See Rhodes*, 945 S.W.2d at 117.

During the course of a lawful traffic stop, an officer who develops reasonable suspicion that an occupant of the vehicle is engaged in, or will soon engage in, criminal activity may continue the detention of the occupants of the

16

vehicle to investigate criminal activity beyond the scope of the law violation that formed the basis of the initial stop. *Sims v. State*, 98 S.W.3d 292, 295–96 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd). The test for reasonable suspicion is still a factual one and is made and reviewed by considering the totality of the circumstances at the time of the stop. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, is, or soon will be engaged in illegal conduct. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). After making a stop for a traffic violation, an officer may rely on all the facts ascertained during the course of his contact with a detainee to develop articulable facts that would justify a continued detention. *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd), *cert. denied*, 529 U.S. 1116 (2000). Further, in forming reasonable suspicion to justify a continued detention, an officer may draw on his training and experience. *Estrada*, 30 S.W.3d at 603; *see United States v. Cortez*, 449 U.S. 411, 421, 101 S. Ct. 690, 697 (1981).

In this case, Meeks testified that what originally brought Appellant's vehicle to his attention was its weaving within its lane. Meeks said that when

17

he was attempting to pull Appellant over for the seat belt infraction, Appellant did not initially stop when Meeks activated his overhead lights, and once Meeks activated his siren, Appellant pulled over to the shoulder, back on to the highway, then ultimately back on to the shoulder. Further, during Appellant's delay in stopping, Meeks said that he observed—and the video confirms—furtive movements by the passenger toward the center of the vehicle. Additionally, when Meeks told Appellant to step out of the vehicle, Appellant could not follow the simple command of keeping his hands in Meeks's sight. The video confirms that Meeks told Appellant four times to keep his hands visible prior to Meeks handcuffing Appellant.

Viewing this evidence in a light most favorable to the trial court's denial of Appellant's motion to suppress, we hold that under the totality of circumstances Meeks had reasonable suspicion to continue to detain Appellant to investigate whether Appellant was engaged in, or would soon engage in, criminal activity even though it was beyond the scope of the seat belt infraction

18

that formed the basis of the initial stop.[10]  *See Sims*, 98 S.W.3d at 295–96. We further hold that Meeks's handcuffing of Appellant was justified by his attempts to effectively provide for his own safety while he investigated this suspicion.  *See Rhodes*, 945 S.W.2d at 117.  We overrule this portion of Appellant's first point.

### c.    The Wine Coolers

In the remainder of his first point, Appellant argues that the wine coolers that were found in his vehicle and the portion of the video displaying Meeks's discovery of them should have been suppressed because they were the results of an illegal search.  However, we hold that the wine coolers were lawfully obtained under the plain view doctrine and that Meeks's discovery and seizure of them did not invoke Appellant's right to be free from unreasonable searches and seizures.

---

[10]We note that there are other factors in this case that Meeks testified to that occurred after Meeks handcuffed Appellant that would have justified Meeks in having a reasonable suspicion to further investigate Appellant for DWI. *See Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g) (holding that slurred speech and the strong smell of alcohol on the appellant's breath gave sufficient reasonable suspicion to investigate DWI after initial stop for traffic violation).  However, Appellant has limited his argument to what he deems "custodial activity" by Meeks and the impression Meeks gave Appellant "that he was under arrest."

19

The plain view doctrine involves no invasion of privacy. *See Texas v. Brown*, 460 U.S. 730, 738–39, 103 S. Ct. 1535, 1541 (1983); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). If an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Walter*, 28 S.W.3d at 541. The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *See Illinois v. Andreas*, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983). "The plain view seizure doctrine requires a two-prong showing: (1) that law enforcement officials see an item in plain view at a vantage point where they have the right to be, and (2) it is immediately apparent that the item seized constitutes evidence—that is, there is probable cause to associate the item with criminal activity." *Martinez v. State*, 17 S.W.3d 677, 685 (Tex. Crim. App. 2000) (*citing Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1198 (1997)).

Also, a person commits an offense if he knowingly possesses an open container of an alcoholic beverage in a passenger area of a motor vehicle that is located on a public highway. Tex. Penal Code Ann. § 49.031(a)(1), (b) (Vernon 2003). "Passenger area" is defined as the area of a motor vehicle

designed for the seating of the operator and passengers of the vehicle. *Id.* § 49.031(a)(2).

Here, Appellant was stopped while driving on a public highway. The video clearly shows that when the passenger exited the vehicle, she left the passenger door open. Meeks testified that as he approached the vehicle he saw the "two wine coolers sitting right in the center of the seats." The video shows him simply lean inside the vehicle, pull out the two bottles, place them on the roof of the vehicle, and then—a brief moment later—take both bottles and pour liquid from them into the ditch.

Even if Meeks had not arrested Appellant for DWI, he could not have permitted Appellant to drive away with two open containers of alcohol inside the vehicle; Appellant would (again) be in violation of the open container law. *See id.* § 49.031(a)(1),(b) Therefore, Meeks had a right to reach inside Appellant's vehicle in order to seize evidence that was in plain view in violation of the open container law. We overrule the remainder of Appellant's first point.

**B. Appellant's Requested Jury Instruction**

In his second point, Appellant argues that the trial court erred by denying his requested jury instruction. He contends that his requested charge addressed the factual basis for the legitimacy of Meeks's stop and further detention and, therefore, Appellant was denied his right to have the jury make a factual

21

finding. The State counters that there was no material fact issue concerning the lawfulness of Meeks's stop. We agree with the State.

In *Madden v. State,* the court of criminal appeals addressed the requirements that a defendant must meet before being entitled to a jury instruction concerning disputed issues of fact that are material to a defendant's claim of a constitutional or statutory violation that would render evidence inadmissible.[11]  242 S.W.3d at 509–10. There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.; see* 40 George E. Dix & Robert O. Dawson, Criminal Practice and Procedure § 4.194 (2d ed. 2001); *see also Merriweather v. State,* 501 S.W.2d 887, 891 (Tex. Crim. App. 1973)

---

[11]Appellant does not identify under which statute he was entitled a jury instruction, but he does reference Texas Code of Criminal Procedure article 36.13. *See* Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon Supp. 2008) ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."). In *Madden*, the court of criminal appeals addressed when a defendant has a statutory right to a jury instruction under article 38.23. *Madden,* 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)*; see* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2008).

22

(holding that when the specific facts used by the court to determine the existence of probable cause were uncontested, the defendant was not entitled to a jury instruction concerning other facts—which were contested—that did not defeat the finding of probable cause).

In this case, Appellant was not entitled to his requested instruction because the instruction did not ask the jury to decide a disputed issue of historical fact—the first requirement under *Madden*. 242 S.W.3d at 510. It asked the jury to decide a question of law—whether the State had proved that Meeks's conduct was not in violation of Appellant's constitutional or statutory rights to be free from unreasonable searches and seizures.

In *Madden*, the defendant requested that an instruction be included in the jury charge asking whether the arresting officer had "reasonable suspicion" to detain the defendant. *Id.* The court of criminal appeals held that it is the "trial judge who decides what quality and quantum of facts are necessary to establish 'reasonable suspicion.'" *Id.* at 511. The court reasoned that a jury "cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law." *Id.*

Here, just as in *Madden*, Appellant's requested instruction asked the jury to decide the legal question of whether the "state has [proved] beyond a reasonable doubt that any investigative detention and/or arrest was not in

23

violation of the defendant's constitutional or Code of Criminal Procedure protections." We hold that Appellant was not entitled to his requested jury instruction because there was no conflict in the evidence that raised a disputed fact issue material to the legal question of whether Meeks could stop or continue to detain Appellant and because Appellant's requested instruction was asking the jury to make a legal determination. *See id.* at 510. We overrule Appellant's second issue.

### C. Factual Sufficiency

In his third point, Appellant argues that the evidence was factually insufficient to prove beyond a reasonable doubt that he was intoxicated.

#### 1. Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23

24

S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a

25

discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## 2. Evidence of Appellant's Intoxication

A person commits the offense of driving while intoxicated if he or she operates a motor vehicle in a public place without the normal use of mental or physical faculties due to the introduction of alcohol or other substances into the body. Tex. Penal Code Ann. §§ 49.01(2)(A), 49.04(a) (Vernon 2003). The corpus delicti of driving while intoxicated is that someone drove or operated a motor vehicle in a public place while intoxicated. *Threet v. State*, 157 Tex. Crim. 497, 498, 250 S.W.2d 200, 200 (1952).

Here, Appellant contends that "[n]either the driving behavior of the Appellant as described by the trooper . . . nor the observations of the Appellant on . . . the videotape corroborates the trooper's conclusions of intoxication." However, the record contains plenty of evidence from which the jury could have found beyond a reasonable doubt that Appellant was intoxicated. The evidence indicating intoxication included Meeks's testimony that Appellant was weaving as he drove, failed to immediately pull over for Meeks, and failed a number of field-sobriety tests. *See Hartman v. State*, 198 S.W.3d 829, 834 (Tex. App.—Corpus Christi 2006, pet. dism'd) (holding that testimony of an

officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication).  Further, there is evidence in the record that Appellant had the inability to follow the commands to keep his hands in sight, Appellant was unable to answer questions concerning the whereabouts of his license, open containers of alcohol were present in Appellant's vehicle at the time he was stopped, there was a report that Appellant had been driving erratically prior to Meeks stopping him, and Appellant refused to submit to a breath test.  *See id.* (reasoning that a jury may consider a defendant's refusal to submit to a breath test as evidence of driving while intoxicated).

The only evidence contrary to intoxication was Appellant's testimony and the testimony of his friends that on the night in question he had only consumed at most one margarita and that he was chosen to drive the passenger home because the passenger was intoxicated but he was not.

Viewing the evidence in a neutral light, we conclude that the evidence supporting the verdict is not too weak to support the jury's finding of guilt beyond a reasonable doubt.  Nor is the weight of the evidence contrary to the verdict so strong that the State could not have met its burden of proof. *See Watson*, 204 S.W.3d at 414–15, 417*.*  We conclude that the evidence is factually sufficient to support the verdict, and we overrule Appellant's third point.

**IV.    Conclusion**

Having overruled each of Appellant's three points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  HOLMAN, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 2, 2008

28