COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
 2-07-186-CR

 

 

WALTER RILEY ROBBINS                                                      APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

               FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

I.       Introduction








A jury convicted Appellant
Walter Riley Robbins of driving while intoxicated.  Appellant pleaded true to a habitual offender
enhancement paragraph, and the jury assessed punishment at four years= incarceration and a $1,500.00 fine. 
In three points, Appellant argues that the trial court erred by denying
his motion to suppress, and by denying his requested charge instruction
regarding the arresting officer=s stop of his vehicle and that the evidence is factually insufficient
to prove that he was intoxicated.  We
affirm.  II.      Factual and Procedural Background

On May 19, 2004, State
Trooper Scott Meeks stopped the vehicle Appellant was driving.  Appellant was arrested for DWI.  Appellant filed a motion to suppress all
evidence Aseized or
obtained@ as a result of the stop, alleging that he Awas seized without any reasonable suspicion that he was engaged in
criminal activity.@  The trial court denied his motion. 

A.     Hearing on Motion to Suppress

At the suppression hearing,
Meeks testified for the State.  Meeks
testified that on the evening of May 19, he was driving along Interstate 35 Aenforcing traffic laws.@  Meeks stated that he observed
a 2002 black Lincoln Continental attempting to pass him.  He said that the vehicle caught his attention
because it was Amoving back
and forth within [its] lane.@  After following the vehicle
for roughly one-half mile, Meeks testified that he observed that the passenger
was not wearing a seat belt.  Meeks
initiated a traffic stop.   








Meeks said he activated his
over-head lights, but the vehicle did not respond by pulling over.  Meeks testified that he would have expected
the vehicle to immediately pull over to the shoulder.  Meeks continued to follow the vehicle for
another one-half mile before activating his siren in an attempt to stop the
vehicle.  Meeks said that, after
activating his siren, it took up to an additional thirty seconds for the
vehicle to eventually pull over.  Meeks
said that the vehicle Aactually
started to pull over onto the shoulder and then pulled back onto the interstate
and then he pulled back on the shoulder again.@   

Meeks testified that while he
was attempting to pull the vehicle over he observed Aa lot of movement, furtive movements inside the vehicle specifically
by the passenger. [The passenger] was moving to the center of the vehicle, back
to the passenger side, back to the center and looked like to me [like the
passenger] was attempting to hide something under the front seat.@[2]   

Meeks stated that he used his
public announcement (APA@) system to instruct Appellant to exit the vehicle and that he
initially handcuffed Appellant,[3]
but later removed the handcuffs.  Meeks
testified that Appellant was not free to leave while he was handcuffed or after
he had removed the handcuffs.   








Appellant testified that he
did not initially pull over for Meeks because he thought Meeks was attempting
to pull over someone other than himself. 
Appellant stated, A[I]t was on
the highway and there was lots of traffic and I knew I hadn=t done anything to warrant being pulled over.@  When asked why he did not
immediately pull over when Meeks activated his siren, Appellant stated, AI don=t remember.@  Appellant testified that Meeks=s attitude toward him was Ascary@ and
intimidating. 

The State then played the
video tape from Meeks=s patrol car=s onboard video camera.  The
trial court denied Appellant=s motion to suppress and called in the jury. 

B.      The Jury Trial

Meeks also testified before
the jury.  He testified to many of the
same things he had stated during the suppression hearing.  In addition, the state played the video from
the onboard camera for the jury as Meeks described the events in the
video.  








While the jury watched the
video, Meeks testified that he remained in his patrol car and used the PA
system to instruct Appellant to get out of his car because AI thought there was a possibility that they might have been hiding a
weapon@ and AI don=t know why [the vehicle occupants are] moving around a lot and I don=t know why they=re not
stopping.  So for my safety I=m not going to walk up to that car . . . .@  Meeks stated that he found two
half-full wine coolers in the front floorboard.[4]  

While the video was still
playing, Meeks testified that another officer arrived on the scene and
explained to him that there had been a Acall [in concerning Appellant=s vehicle] for erratic driving and weaving in and out of traffic.@  Meeks was unaware of the call
at the time he initiated the stop. Meeks also said that by this time he had
arrested the passenger and placed her in the back of his vehicle.[5]  Meeks further stated that he had not yet made
a determination whether to arrest Appellant for DWI but that he did have Aa couple of clues of impairment.@  Meeks also testified that
despite Appellant telling him of two different locations where Appellant=s driver=s license
would be, Appellant never produced a driver=s license and only had an identification card with him. 













In an effort to determine if
Appellant was intoxicated, Meeks said that he first performed the portable
breath test on Appellant.[6]  Meeks testified that the portable breath test
indicated the presence of alcohol in Appellant=s system. Meeks then testified that he is certified to administer and
did administer a number of standard field sobriety tests including the
horizontal gaze nystagmus test, the nine-step and turn test, and the one-legged
stand test.  Meeks also testified that
Appellant displayed six of six possible clues for the horizontal gaze nystagmus
test.  Meeks stated that he Aassigned@ two clues
to Appellant on the nine-step and turn test, but Aif you want to really go by the manual, that=s ‑‑ you know, most officers would probably assign him
five clues, and I only assigned him two.@  Meeks testified that he
observed three of four possible clues when he conducted the one-legged stand
test on Appellant.  Meeks then stated
that he conducted a nonstandardized field sobriety test, a Adivided attention test,@ but Meeks never testified specifically whether Appellant failed the
test.[7]  Meeks also stated that during his encounter
with Appellant, Appellant said he drank Aone margarita@ that
evening.  Meeks testified that he
ultimately placed Appellant under arrest for DWI. 

Three witnesses, other than
Appellant himself, testified before the jury on Appellant=s behalfCIra
Sherrill, Charley Rodden, and Elaine Hudnall,[8]
who was the passenger in the vehicle the night Appellant was arrested.  Sherrill and Rodden both testified that
Appellant had only one margarita that evening and that Appellant was asked to
drive Hudnall home because Hudnall was intoxicated and unable to drive and
Appellant was not intoxicated. 

Hudnall testified that she
had asked to be driven home because she was unable to drive and that when she
and Appellant had stopped to buy gas, she purchased a four-pack of wine
coolers.  She testified that after getting
gas she Aopened the wine cooler[s], one for me . . .  one for him. 
And we left to go on home.@  But she said that Appellant
did not drink his wine cooler.








Appellant testified that
earlier in the evening he had attended a retirement party for a friend.  Appellant said he initially ordered a
margarita that was not satisfactory.  He
said that he asked the waiter to bring him a new one and that after more than
twenty minutes the waiter did.  But
Appellant testified that he did not consume the entire drink.  Appellant testified that roughly an hour
passed between when the waiter brought him the replacement drink and when he
volunteered to drive Hudnall home. 
Appellant admitted that when Meeks asked him when and how much he had to
drink that night, he told Meeks an incorrect time because he wasn=t Athinking
clearly@ and simply wanted to give Meeks Aan answer so [he would stop questioning him].@  Appellant said he drove
Hudnall home because Ashe was
drunk@ and had asked someone to drive her home.  He testified that he did not ask Hudnall to
purchase the wine coolers when they stopped for gas.  And Appellant testified that he had not
consumed any alcohol between the time he drank the one margarita earlier in the
evening and when Meeks pulled him over. 








Appellant again said that he
did not initially pull over for Meeks because he Aknew he hadn=t done
anything [wrong]@ and that he
thought Meeks was attempting to signal to him to slow down so that Meeks could
pass him. Appellant said that he did not fully comply with Meeks=s instructions when asked to exit the vehicle because he was Aconfused@ by Meeks=s having stated at first to@keep your hands where I can see them@ and then later stating Aput your hands on top of your head.@[9]  

Appellant testified that when
he was brought to jail he refused to provide a sample of his breath for
testing.  He also said that he had
previously had his license suspended for refusing a breath test.  He then testified that he had three prior
convictions for DWI in Texas and one prior arrest for DWI in New Mexico.
Appellant stated he did not remember if the New Mexico arrest ever resulted in
a conviction. 

C.     The Jury Charge








Appellant submitted to the
trial court an additional instruction to be included in the jury charge.  The court denied the submission.  The requested instruction explained a person=s rights under the Fourth Amendment to the United States Constitution
and article 1, section 9 of the Constitution of the State of Texas.  See U.S. Const. amend. IV; Tex. Const.
art. I, ' 9.  It further describes
the warrant requirement and a number of exceptions to the warrant requirement
and then ends with this excerpt:

Therefore,
you are instructed that before you consider any evidence that was derived by
either an investigative detention or arrest of the defendant for purposes of
guilt or innocence, that the state has the burden of proof to prove beyond a
reasonable doubt that any investigative detention and/or arrest was not in
violation of the defendant=s constitutional or Code of
Criminal Procedure protections.  Unless
the state does so beyond a reasonable doubt, you are instructed to not consider
any evidence derived from or stemming from the illegal acts. 

 

The actual jury charge did
not include instructions regarding Appellant=s rights under the Fourth Amendment to the United States Constitution
and article 1, section 9 of the Texas Constitution.  Nor did the jury charge ask the jury to
determine if Meeks=s stopping
Appellant was in violation of these rights. The jury charge was a standard jury
charge asking the jury to determine whether Appellant was guilty of DWI. 

III.     Discussion

A.     The Trial Court=s Denial of Appellant=s Motion to Suppress

In his first point, Appellant
argues that the trial court erred by denying his motion to suppress evidence
obtained when Meeks stopped Appellant. Appellant challenges both the initial
stop and Meeks=s continued
detention of him.  Appellant also argues
that the wine coolers and the video displaying Meeks=s discovery of them should have been suppressed. 








1.      Standard of Review  








We review a trial court=s ruling on a motion to suppress evidence under a bifurcated standard
of review.  Amador v. State, 221
S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997).  In reviewing
the trial court=s decision,
we do not engage in our own factual review. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000), modified on other grounds by State v. Cullen,
195 S.W.3d 696 (Tex. Crim. App. 2006). 
Therefore, we give almost total deference to the trial court=s rulings on (1) questions of historical fact, even if the trial court=s determination of those facts was not based on an evaluation of
credibility and demeanor, and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex. Crim. App. 2002).  But
when application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s rulings on those questions de novo. 
Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d
604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652B53.

Stated another way, when
reviewing the trial court=s ruling on
a motion to suppress, we must view the evidence in the light most favorable to
the trial court=s
ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or
when, as in this case, there are no explicit fact findings and neither party
timely requested findings and conclusions from the trial court, we imply the
necessary fact findings that would support the trial court=s ruling if the evidence, viewed in the light most favorable to the trial
court=s ruling, supports those findings. 
Kelly, 204 S.W.3d at 818 ; see 
Amador, 221 S.W.3d at 673; Wiede, 214 S.W.3d at 25.  We then review the trial court=s legal ruling de novo unless the implied fact findings supported by
the record are also dispositive of the legal ruling.  Kelly, 204 S.W.3d at 819.

We must uphold the trial
court=s ruling if it is supported by the record and correct under any theory
of law applicable to the case even if the trial court gave the wrong reason for
its ruling.  State v. Stevens, 235
S.W.3d 736, 740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004). 








In determining whether a
trial court=s decision
is supported by the record, we generally consider only evidence adduced at the
suppression hearing because the ruling was based on it rather than evidence
introduced later.  See Gutierrez v.
State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); Rachal v. State,
917 S.W.2d 799, 809 (Tex. Crim. App.), cert. denied, 519 U.S. 1043
(1996).  But this general rule is
inapplicable when, as in this case, the parties consensually relitigated the
suppression issue during trial on the merits. 
Gutierrez, 221 S.W.3d at 687; Rachal, 917 S.W.2d at
799.  If the State raised the issue at
trial either without objection or with subsequent participation in the inquiry
by the defense, the defendant is deemed to have elected to re‑open the
evidence, and we may consider the relevant trial testimony in our review.  Rachal, 917 S.W.2d at 799. 

2.      Discussion of Appellant=s First Point

a.      The Stop

In part of his first point,
Appellant argues that Meeks=s stopping of him Awas based on a pretext without sufficient support for the stop.@  We are not persuaded by this
argument. 








Both the Fourth Amendment and
article one, section nine of the Texas Constitution guarantee individuals the
right to be free from unreasonable searches and seizures.  See U.S. Const. amend. IV; Tex. Const.
art. I, ' 9.  These rights do not forbid all searches and
seizures, but only unreasonable searches and seizures.  Davis v. State, 947 S.W.2d 240, 242
(Tex. Crim. App. 1997).  An officer=s stop of an automobile constitutes a seizure within the meaning of
the Fourth Amendment and the search and seizure provision of the state constitution.  See Corbin v. State, 85 S.W.3d 272,
276 (Tex. Crim. App. 2002); see also Delaware v. Prouse, 440 U.S. 648,
653, 99 S. Ct. 1391, 1396 (1979); Johnson v. State, 912 S.W.2d 227, 235
(Tex. Crim. App. 1995).  








An automobile stop is justified
when an officer has reasonable suspicion to believe that a traffic violation
has occurred.  Terry v. Ohio, 392 U.S. 1, 21B22, 88 S. Ct.
1868, 1880 (1968); Woods v. State, 956
S.W.2d 33, 35 (Tex. Crim. App. 1997). 
The burden is on the State to demonstrate the reasonableness of the
investigatory stop.  Bishop v. State,
85 S.W.3d 819, 822 (Tex. Crim. App. 2002); Aviles v. State, 23 S.W.3d
74, 79 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).  Whether or not an officer
has reasonable suspicion is evaluated from an objective perspective.  Whren v. United States, 517 U.S. 806,
811, 116 S. Ct. 1769, 1773 (1996); United States v. Lopez‑Valdez,
178 F.3d 282, 288 (5th Cir.1999); Aviles, 23 S.W.3d at 77.  In other words, looking at the facts
available to the officer at the moment of the investigation, would a person of
reasonable caution believe that a traffic violation occurred.  Lopez‑Valdez, 178 F.3d at 288; Aviles,
23 S.W.3d at 77.  

The failure to wear a seat
belt while in the front seat of a vehicle is a violation of section 545.413 of
the transportation code.  See Tex. Transp. Code Ann. ' 545.413 (Vernon Supp. 2008); see also Tex. Dep=t of Pub. Safety v. Torres, 54 S.W.3d
438, 441 (Tex. App.CFort Worth
2001, no pet.).  Meeks testified that he
observed that the passenger was not wearing a seat belt.  He stated that he could see that the strap
was not coming across the passenger=s shoulder.  Further, the video
from Meeks=s patrol car
clearly depicts the passenger telling Meeks that she wore her seat belt Aninety-nine percent of the time.@  But when asked why she was not
wearing one in this instance she answered, AI guess I just forgot.@  We hold that these facts, when
viewed in the light most favorable to the trial court=s denial of Appellant=s motion to suppress, support that Meeks=s stopping of Appellant=s vehicle was justified by reasonable suspicion.  Thus, we overrule this portion of Appellant=s first point. 

b.      Continued Detention








In his first point Appellant
also argues that Meeks effectively placed him under arrest when he handcuffed
him on the side of the road prior to searching his vehicle.  Thus, Appellant argues that the search was an
illegal search and all evidence of the search should have been suppressed.  The State counters that what Meeks did was
continue to detain Appellant based on his observations that Appellant might be
intoxicated.  We agree that Meeks=s continued detention was justified. 

In a traffic stop situation,
the police may ask for identification, a valid driver=s license, and proof of liability insurance.  Davis, 947 S.W.2d at 244.  Police may check for outstanding
warrants.  Id.  Police officers may also order the driver to
get out of the vehicle.  See
Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977); see
also Diltz v. State, 172 S.W.3d 681, 685 (Tex. App.CEastland 2005, no pet.). 
Further, as a general rule, officers may use such force as is reasonably
necessary to effect the goal of the stopCinvestigation, maintenance of the status quo, or officer safety.  Rhodes v. State, 945 S.W.2d 115, 117
(Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997) (citing United
States v. Sokolow, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989)).  Under certain circumstances, the handcuffing
of the vehicle=s occupants
may be appropriate to effectuate officer safety, such as when it is necessary
to thwart the suspect=s attempt to
frustrate further inquiry.  See Rhodes,
945 S.W.2d at 117. 








During the course of a lawful
traffic stop, an officer who develops reasonable suspicion that an occupant of
the vehicle is engaged in, or will soon engage in, criminal activity may
continue the detention of the occupants of the vehicle to investigate criminal
activity beyond the scope of the law violation that formed the basis of the
initial stop.  Sims v. State, 98
S.W.3d 292, 295B96 (Tex.
App.CHouston [1st Dist.] 2003, pet. ref=d); Estrada v. State, 30 S.W.3d 599, 603 (Tex. App.CAustin 2000, pet. ref=d).  The test for reasonable
suspicion is still a factual one and is made and reviewed by considering the
totality of the circumstances at the time of the stop.  Loesch v. State, 958 S.W.2d 830, 832
(Tex. Crim. App. 1997).  Reasonable
suspicion exists if the officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead him to
reasonably suspect that a particular person has, is, or soon will be engaged in
illegal conduct.  Garcia v. State,
43 S.W.3d 527, 530 (Tex. Crim. App. 2001). 
After making a stop for a traffic violation, an officer may rely on all
the facts ascertained during the course of his contact with a detainee to
develop articulable facts that would justify a continued detention.  Powell v. State, 5 S.W.3d 369, 377
(Tex. App.CTexarkana
1999, pet. ref=d), cert.
denied, 529 U.S. 1116 (2000). 
Further, in forming reasonable suspicion to justify a continued
detention, an officer may draw on his training and experience.  Estrada, 30 S.W.3d at 603; see
United States v. Cortez, 449 U.S. 411, 421, 101 S. Ct. 690, 697 (1981).








In this case, Meeks testified
that what originally brought Appellant=s vehicle to his attention was its weaving within its lane.  Meeks said that when he was attempting to
pull Appellant over for the seat belt infraction, Appellant did not initially
stop when Meeks activated his overhead lights, and once Meeks activated his
siren, Appellant pulled over to the shoulder, back on to the highway, then
ultimately back on to the shoulder. 
Further, during Appellant=s delay in stopping, Meeks said that he observedCand the video confirmsCfurtive movements by the passenger toward the center of the
vehicle.  Additionally, when Meeks told
Appellant to step out of the vehicle, Appellant could not follow the simple
command of keeping his hands in Meeks=s sight.  The video confirms
that Meeks told Appellant four times to keep his hands visible prior to Meeks
handcuffing Appellant.  








Viewing this evidence in a light
most favorable to the trial court=s denial of Appellant=s motion to suppress, we hold that under the totality of circumstances
Meeks had reasonable suspicion to continue to detain Appellant to investigate
whether Appellant was engaged in, or would soon engage in, criminal activity
even though it was beyond the scope of the seat belt infraction that formed the
basis of the initial stop.[10]  See Sims, 98 S.W.3d at 295B96.  We further hold that Meeks=s handcuffing of Appellant was justified by his attempts to
effectively provide for his own safety while he investigated this
suspicion.  See Rhodes, 945 S.W.2d
at 117.  We overrule this portion of
Appellant=s first
point. 

c.      The Wine Coolers

In the remainder of his first
point, Appellant argues that the wine coolers that were found in his vehicle
and the portion of the video displaying Meeks=s discovery of them should have been suppressed because they were the
results of an illegal search.  However,
we hold that the wine coolers were lawfully obtained under the plain view
doctrine and that Meeks=s discovery
and seizure of them did not invoke Appellant=s right to be free from unreasonable searches and seizures.        








The plain view doctrine
involves no invasion of privacy.  See
Texas v. Brown, 460 U.S. 730, 738B39, 103 S. Ct. 1535, 1541 (1983); Walter v. State, 28 S.W.3d
538, 541 (Tex. Crim. App. 2000).  If an
item is in plain view, neither its observation nor its seizure involves any
invasion of privacy.  Walter, 28
S.W.3d at 541.  The rationale of the
plain view doctrine is that if contraband is left in open view and is observed
by a police officer from a lawful vantage point, there has been no invasion of
a legitimate expectation of privacy and thus no Asearch@ within the
meaning of the Fourth Amendment.  See
Illinois v. Andreas, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983).  AThe plain view seizure doctrine requires a two‑prong
showing:  (1) that law enforcement
officials see an item in plain view at a vantage point where they have the
right to be, and (2) it is immediately apparent that the item seized
constitutes evidenceCthat is,
there is probable cause to associate the item with criminal activity.@  Martinez v. State, 17
S.W.3d 677, 685 (Tex. Crim. App. 2000) (citing Ramos v. State, 934
S.W.2d 358, 365 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1198
(1997)).








Also, a person commits an
offense if he knowingly possesses an open container of an alcoholic beverage in
a passenger area of a motor vehicle that is located on a public highway.  Tex. Penal Code Ann. ' 49.031(a)(1), (b) (Vernon 2003). APassenger area@ is defined
as the area of a motor vehicle designed for the seating of the operator and
passengers of the vehicle.  Id. ' 49.031(a)(2).

Here, Appellant was stopped
while driving on a public highway.  The
video clearly shows that when the passenger exited the vehicle, she left the
passenger door open.  Meeks testified
that as he approached the vehicle he saw the Atwo wine coolers sitting right in the center of the seats.@  The video shows him simply
lean inside the vehicle, pull out the two bottles, place them on the roof of
the vehicle, and thenCa brief
moment laterCtake both
bottles and pour liquid from them into the ditch.

Even if Meeks had not
arrested Appellant for DWI, he could not have permitted Appellant to drive away
with two open containers of alcohol inside the vehicle; Appellant would (again)
be in violation of the open container law. 
See id. ' 49.031(a)(1),(b)  Therefore,
Meeks had a right to reach inside Appellant=s vehicle in order to seize evidence that was in plain view in
violation of the open container law.  We
overrule the remainder of Appellant=s first point.

B.      Appellant=s Requested Jury Instruction








In his second point,
Appellant argues that the trial court erred by denying his requested jury
instruction.  He contends that his
requested charge addressed the factual basis for the legitimacy of Meeks=s stop and further detention and, therefore, Appellant was denied his
right to have the jury make a factual finding. 
The State counters that there was no material fact issue concerning the
lawfulness of Meeks=s stop.  We agree with the State. 








In Madden v. State, the
court of criminal appeals addressed the requirements that a defendant must meet
before being entitled to a jury instruction concerning disputed issues of fact
that are material to a defendant=s claim of a constitutional or statutory violation that would render
evidence inadmissible.[11]  242 S.W.3d at 509B10.  There are three
requirements that a defendant must meet before he is entitled to the submission
of a jury instruction under article 38.23(a): 
(1) the evidence heard by the jury must raise an issue of fact; (2) the
evidence on that fact must be affirmatively contested; and (3) the contested
factual issue must be material to the lawfulness of the challenged conduct in
obtaining the evidence.  Id.; see 40
George E. Dix & Robert O. Dawson, Criminal Practice and Procedure ' 4.194 (2d ed. 2001); see also Merriweather v. State, 501
S.W.2d 887, 891 (Tex. Crim. App. 1973) (holding that when the specific facts
used by the court to determine the existence of probable cause were uncontested,
the defendant was not entitled to a jury instruction concerning other factsCwhich were contestedCthat did not defeat the finding of probable cause).

In this case, Appellant was not
entitled to his requested instruction because the instruction did not ask the
jury to decide a disputed issue of historical factCthe first requirement under Madden.  242 S.W.3d at 510.  It asked the jury to decide a question of lawCwhether the State had proved that Meeks=s conduct was not in violation of Appellant=s constitutional or statutory rights to be free from unreasonable
searches and seizures.  

In Madden, the
defendant requested that an instruction be included in the jury charge asking
whether the arresting officer had Areasonable suspicion@ to detain the defendant.  Id.  The court of criminal appeals held that
it is the Atrial judge
who decides what quality and quantum of facts are necessary to establish >reasonable suspicion.=@  Id. at 511.  The court reasoned that a jury Acannot be expected to decide whether the totality of certain facts do
or do not constitute >reasonable
suspicion= under the
law.@  Id.








Here, just as in Madden,
Appellant=s requested
instruction asked the jury to decide the legal question of whether the Astate has [proved] beyond a reasonable doubt that any investigative
detention and/or arrest was not in violation of the defendant=s constitutional or Code of Criminal Procedure protections.@   We hold that Appellant was
not entitled to his requested jury instruction because there was no conflict in
the evidence that raised a disputed fact issue material to the legal question
of whether Meeks could stop or continue to detain Appellant and because
Appellant=s requested
instruction was asking the jury to make a legal determination.  See id. at 510.  We overrule Appellant=s second issue. 

C.     Factual Sufficiency

In his third point, Appellant
argues that the evidence was factually insufficient to prove beyond a
reasonable doubt that he was intoxicated. 

1.      Standard of Review








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).  

2.      Evidence of Appellant=s Intoxication

A person commits the offense
of driving while intoxicated if he or she operates a motor vehicle in a public
place without the normal use of mental or physical faculties due to the
introduction of alcohol or other substances into the body.  Tex. Penal Code Ann. '' 49.01(2)(A),
49.04(a) (Vernon 2003).  The corpus
delicti of driving while intoxicated is that someone drove or operated a motor
vehicle in a public place while intoxicated. 
Threet v. State, 157 Tex. Crim. 497, 498, 250 S.W.2d 200, 200
(1952).








Here, Appellant contends that
A[n]either the driving behavior of the Appellant as described by the
trooper . . . nor the observations of the Appellant on
. . . the videotape corroborates the trooper=s conclusions of intoxication.@  However, the record contains
plenty of evidence from which the jury could have found beyond a reasonable
doubt that Appellant was intoxicated.  
The evidence indicating intoxication included Meeks=s testimony that Appellant was weaving as he drove, failed to
immediately pull over for Meeks, and failed a number of field-sobriety
tests.  See Hartman v. State,
198 S.W.3d 829, 834 (Tex. App.CCorpus Christi 2006, pet. dism=d) (holding that testimony of an officer that a person is intoxicated
provides sufficient evidence to establish the element of intoxication).  Further, there is evidence in the record that
Appellant had the inability to follow the commands to keep his hands in sight,
Appellant was unable to answer questions concerning the whereabouts of his
license, open containers of alcohol were present in Appellant=s vehicle at the time he was stopped, there was a report that
Appellant had been driving erratically prior to Meeks stopping him, and
Appellant refused to submit to a breath test. 
See id. (reasoning that a jury may consider a defendant=s refusal to submit to a breath test as evidence of driving while
intoxicated).   

The only evidence contrary to
intoxication was Appellant=s testimony and the testimony of his friends that on the night in
question he had only consumed at most one margarita and that he was chosen to
drive the passenger home because the passenger was intoxicated but he was not.

Viewing the evidence in a
neutral light, we conclude that the evidence supporting the verdict is not too
weak to support the jury=s finding of
guilt beyond a reasonable doubt.  Nor is
the weight of the evidence contrary to the verdict so strong that the State
could not have met its burden of proof. See Watson, 204 S.W.3d at 414B15, 417.  We conclude
that the evidence is factually sufficient to support the verdict, and we
overrule Appellant=s third
point.








IV.     Conclusion

Having overruled each of
Appellant=s three
points, we affirm the trial court=s judgment.   

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  HOLMAN, GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 2, 2008











[1]See Tex.
R. App. P. 47.4.





[2]The
video that was admitted into evidence is sometimes out of focus, but the
passenger in Appellant=s
vehicle can be seen at this point leaning over to the middle of the
vehicle.  At other times in the video,
the driver=s and
passenger=s
silhouettes cannot be clearly identified. 






[3]The
video=s
audio is sometimes scrambled, however, at this point Meeks can clearly be heard
telling Appellant, AYou=re
being handcuffed right now, not because you=re under arrest, but just for
my safety.@ 





[4]The
video does clearly depict that when the passenger exited the vehicle, she left
the passenger door open.  When Meeks
approached the vehicle, he leaned inside the vehicle, pulled out two bottles,
placed them on the roof of the vehicle, and then took both bottles and poured
liquid from them into the ditch. 





[5]The
videoCand
audio from the videoCconfirm
that Meeks had arrested the passenger by this time and that before he called
dispatch concerning Appellant=s identification, another
officer arrived and advised Meeks that a vehicle matching the description of
the vehicle Appellant was driving had Aa call out on it for erratic
driving.@





[6]Although
Meeks did not testify concerning the status of Appellant=s
license, the video clearly reveals that Meeks called in to his dispatcher and
learned that Appellant=s
license was suspended before Meeks conducted the field sobriety tests.  





[7]The
video shows that Meeks instructed Appellant to touch his thumb to each of his
each of his fingers while counting and Appellant was unable to perform the test
as instructed.  At this point Meeks
informed Appellant that he was under arrest and handcuffed him again.  





[8]During
the trial, Elaine Hudnall was also referred to as Ms. Sauder by Appellant=s
counsel. 





[9]The
video depicts that Meeks initially used his PA to say ADriver,
step out of the car with your hands up, please.@  Appellant got out of the vehicle with his
hands at his side.  Meeks, using the PA,
then said, AKeep
your hands up where I can see them, step over here in this bar ditch.@  Appellant raised his hands.  Then, as Appellant stepped into the ditch, he
dropped his hands to his sides and Meeks, using the PA, stated AKeep
your hands on your head.@  As Meeks began to address the passenger,
Appellant again dropped his hands to his sides, and Meeks exclaims, ADriver!
I said keep your hands on your head!@ 





[10]We
note that there are other factors in this case that Meeks testified to that
occurred after Meeks handcuffed Appellant that would have justified Meeks in
having a reasonable suspicion to further investigate Appellant for DWI.  See Rubeck v. State, 61 S.W.3d 741,
745 (Tex. App.CFort
Worth 2001, no pet.) (op. on reh=g) (holding that slurred
speech and the strong smell of alcohol on the appellant=s
breath gave sufficient reasonable suspicion to investigate DWI after initial
stop for traffic violation).  However,
Appellant has limited his argument to what he deems Acustodial
activity@ by
Meeks and the impression Meeks gave Appellant Athat
he was under arrest.@    





[11]Appellant
does not identify under which statute he was entitled a jury instruction, but
he does reference Texas Code of Criminal Procedure article 36.13.  See Tex. Code Crim. Proc. Ann. art.
36.13 (Vernon Supp. 2008) (AUnless otherwise provided in
this Code, the jury is the exclusive judge of the facts, but it is bound to
receive the law from the court and be governed thereby.@).  In Madden, the court of criminal
appeals addressed when a defendant has a statutory right to a jury instruction
under article 38.23.  Madden, 242
S.W.3d 504, 510 (Tex. Crim. App. 2007); see Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp. 2008).